## Sublett v. The Mobile & Ohio Railway Company

(Decided December 6, 1911.)

### Appeal from Hickman Circuit Court

1.   Torts—Negligence.—The general rule, that although those in charge of a train could not have prevented an accident by run-

ning into horses upon. a public crossing after they were dis-
covered, the company is, nevertheless, liable, if they fail to give
the statutory signals on the approach of the train to the crossing
must be restricted in its application to those cases wherein the
injury is the proximate result of such negligence. If it plainly
appears that the injury resulted from causes or acts other than the
negligence of the company's servants, and wholly irrespective
thereof, there is no ground for putting a liability upon the com-
pany.

2. Negligence.—In order for a plaintiff to recover damages for in-
jury to his stock by a railroad train, he. must not only show that
there was negligence on the. part of the defendant, but also that
the injury occurred as the proximate result of such negligence; he
can not complain of negligence on the part of the defendant, which
in no way affected the injury complaned of.

SMITH, HINDMAN & WYATT for appellant.

LANSDEN & LANSDEN and E. T. BULLOCK for appellee.

Opinion of the Court by Judge Miller—Affirming.

The appellant, Sublett, brought this action against
the appellee railroad company for $357.25 damages, for
injuries to his team of horses and wagon, which he al-
ledged were caused by the appellee's freight train run-
ning into his team on October 18, 1910, at about 8 o'clock
p. m., at a point where the Clinton. and Moscow public
road crosses the appellee's railroad track, about one mile
north of Moscow. There was no eye witness of the acci-
dent. Shortly before the, accident the appellant had left
his team hitched to his wagon, and unattended, on a
street in Moscow. The horses started down the road to-
ward Clinton in a run, appellant running after them, and
only a short distance behind them. The horses circled
through the streets of the town, and went north by way
of the bridge over Bayou De Chien creek, the Twin
bridges, and then up the road toward Clinton. The
horses constantly extended their lead of appellant, un-
til they reached the railroad crossing about a mile north
of town, when the appellant was about 350 yards behind
his team. At this point the railroad track runs in a
northwardly and southwardly direction, while the pub-
lic road runs in a northeasterly direction and crosses the
railroad track by an approach covered with cinders,
which arises to an elevation of some seven or eight feet.
Shortly before appellant reached the crossing, appel-
lees freight. train passed southwardly toward Moscow.

Appellant says the train whistled for Moscow after it had passed the crossing, while appellee's trainmen insist that the whistle was sounded for the crossing, and while the train was north of and before it reached the crossing. When appellant reached the crossing he found his wagon about twelve feet west of the railroad track and north of the crossing, the front part of it turned northwardly; one horse standing back near the side of the railroad track, and the other horse attached to the wagon. The tongue of the wagon was broken into three pieces and both horses were badly injured about the head, neck and shoulders. One of them died within a few days, and the other was badly crippled. At the conclusion of the plaintiff's evidence, appellee moved the court to peremptorily instruct the jury to find for the defendant, but the court overruled the motion at that time; but, at the end of all the testimony, and upon a renewal of the motion, the circuit judge sustained it, and peremptorily directed the jury to find for the defendant, which was done; and from a verdict and judgment conforming to that ruling, the plaintiff prosecutes this appeal.

As there was a conflict in the evidence as to whether the engineer of the train sounded the whistle before he reached the crossing, it is contended by appellant that the case should have gone to the jury; while, on the other hand, the appellee insists that although it be conceded, for the purposes of the trial, that the signal for the crossing was not given, this was, nevertheless, a case where the horses ran away and into the train; that there was no connection whatever between the failure to whistle, and the injury to the team; and that before there can be a recovery it must be made to appear that the injuries to the team were the proximate result of the failure to whistle for the crossing. When we consider that Moscow was about a mile further down the track, it is hardly probable the whistle heard by Sublett was intended for the Moscow stop as he contends; it is far more probable that it was intended for the crossing.

Conceding, however, that there was conflicting testimony as to whether the whistle was sounded before the train reached the crossing, which would ordinarily be sufficient to send the case to the jury, it is, nevertheless, clearly apparent from the evidence that the horses ran into the train and that the failure to signal the crossing, if there was such a failure, was not the proximate cause of the injuries. The trainmen of the company insist that

they had no accident of any kind at the time and place above indicated, and never heard of the accident complained of until afterwards. All the witnesses concur in stating that the wounds and injuries to the horses were about their heads, necks and shoulders, and that the tongue was the only portion of the wagon that was injured. Moreover, the location of the horses and team after the accident shows that they were not struck while they were on, or crossing the track, but that the team was injured on the west or approaching side of the railroad track, and before it had gotten upon the track. If the team had been upon the track, and had been struck by the engine, the blow, in all probability, would have carried it to the south side of the crossing, and upon either side of the railroad track; but all the witnesses agree that the horses and wagon were upon the north side of the crossing, and the west side of the track. Such a condition could not have been the result if the team had been struck, while crossing the track, by a heavy freight train moving at the rate of from 20 to 25 miles an hour. Several of the witnesses attempted to find marks or evidence of some kind between the rails that might indicate that the horses had gotten that far; but, in this, they wholly failed. The evidence shows that the accident occurred upon the western side of the track, and before the horses had gotten upon the track. Evidently, while running away, they ran into the freight cars of the train after the engine had passed the crossing. Under these facts, we think the circuit judge properly withdrew the case from the jury.

The general rule in cases of this class is, that although those in charge of the train could not have prevented the accident, or saved the horses after they were discovered, the company is, nevertheless, liable if they failed to give the signals, such as the statute requires, on the approach of a train to a public crossing. M. & O. R. R. Co. v. Roper, 22 Ky. Law Rep., 666, 58 S. W., 518. But this general rule must, of necessity, be restricted in its application to those cases wherein the injury is the proximate result of such negligence. If it plainly appears that the injury resulted from causes or acts other than the negligence of the company's servants, and wholly irrespective thereof, there is no ground for putting a liability upon the company.

This rule was applied in L. & N. R. R. Co. v. Onan's Admr., 33 Ky. Law Rep., 462, 110 S. W., 380, where this

court said, that if the proximate cause of the accident was the backing of Onan's horse upon the track, and not a failure of the engineer to give notice of the approach of the train, there was no liability upon the part of the defendant.

And, in Hummer's Extx. v. L. & N. R. R. Co., 128 Ky., 486, 494, it was said:

"It is incumbent on railroad trains to give proper warning of their approach, and, although deaf persons may not hear them, other persons may, and thus save them from danger. But under the facts in this case the instruction was not prejudicial. In order for the plaintiff to recover he must not only show that there was negligence on the part of the defendant, but also that the injury occurred as the proximate result of such negligence; for he can not complain of negligence on the part of the defendant which in no way affected the injury complained of."

In the case at bar it is plain that although the appellee may have failed to give the signal for the crossing. the injury was not the proximate result of that failure: it in no way affected the bringing about of the injuries complained of.

Appellant relies chiefly upon the authority of L. & N. R. R. Co. v. Montgomery, 17 Ky. Law Rep., 807, 32 S. W., 738, decided in 1895. But that case is easily distinguishable, in principle, from the case at bar. The facts and circumstances attending the accident in that case, such as the retreat of the horse down the track in its attempt to escape, not only showed negligence on the part of the company, but also that the killing was the proximate result of said negligence. A like state of facts appears in L. & N. R. R. Co. v. Moore, 29 Ky. Law Rep., 293. Such, however, is not the case here.

Under the facts of this case, we are of opinion that the ruling of the circuit judge in peremptorily directing a verdict for the defendant, was right. Weingartner v. L. & N. R. R. Co., 19 Ky. Law Rep., 1023, 42 S. W., 839.

Judgment affirmed.