Hillsborough, }
May 1, 1923. }

### EVA MORIER *v.* WALKER D. HINES, *Director-General.*

#### ADELARD MORIER *v.* SAME.

It is not the duty of a train engineer, when he observes a motor cycle approaching a highway crossing, to stop and allow it to pass, but the duty is upon the highway traveler to stop and allow the train to pass.

An issue cannot be submitted to the jury upon a mere *scintilla* of evidence which reasonable men would not consider sufficient to counterbalance the direct evidence of the fact.

To justify a submission to the jury of the question whether the statutory crossing signal was given, there must be evidence tending to show disobedience of

the statute, that such disobedience was a breach of a duty due the traveler and that but for such disobedience the injury or collision would not have occurred.

The negligence of the driver of a vehicle does not prevent recovery by an innocent passenger against the defendant, a third person, where the injury results from the combined effect of the negligence of such person and of the driver; but no recovery may be had where the sole legal cause of the injury is the negligence of the driver or where the defendant is without fault.

The question what is the proximate cause of an injury is for the jury; whether there is evidence upon which such finding can be made is a question of law.

The failure to give crossing signals renders a railroad liable only when it is shown that such failure is the cause of the injury; the duty being imposed to warn highway travelers of the intended use of the crossing, an omission to signal is no negligence and no breach of duty as to one fully informed of the train's approach.

CASE, for negligence to recover for injuries received about 7 A.M. July 7, 1919, when a motor cycle upon which the plaintiffs were riding struck a railroad train operated by the defendant upon a highway grade crossing in Salem. The cases were tried together by jury. In the first case the jury returned a verdict for the plaintiff Eva; and in the second, for the defendant. The defendant's motions for a nonsuit and for a directed verdict in each case were denied subject to exception.

The evidence tended to prove that the two plaintiffs were traveling upon the highway leading southerly toward Salem on a motor cycle, the plaintiff Adelard driving and the plaintiff Eva riding in the side car. At Canobie Lake station they crossed from east to west the defendant's railroad leading to the same point. At the time of this crossing the defendant's train, also going to Salem, was either stopped at or just leaving Canobie Lake station. Both plaintiffs saw the train and knew its destination. For about a mile southerly the railroad and highway pursue substantially the same course; the highway then recrossing the railroad to the east. Both plaintiffs were acquainted with the road and knew the location of the crossing upon which the collision occurred. The railroad is visible from the highway the greater part of the distance between the crossings and for several hundred feet before the crossing was reached is in plain view from the highway. The motor cycle ran into the train on this crossing, striking at the gangway between the engine and cab, and the plaintiffs received the injuries for which suit is brought. Other facts appear in the opinion.

Transferred by *Branch,* J.

*Lucier & Lucier* (*Mr. Alvin J. Lucier* orally), for the plaintiffs.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

Parsons, C. J. The cases were tried together. The jury found against Adelard, the driver of the motor cycle, and in favor of Eva, the passenger. They must therefore have found that both the defendant and Adelard were negligent and that despite Adelard's negligent driving of the car, the defendant's negligence was the proximate cause of Eva's injury. The jury were properly instructed that Adelard's negligence in driving should not be imputed to Eva. In other words, Eva, herself free from fault, was not debarred from recovery because Adelard's negligent driving contributed in some degree to cause the injury. The doctrine that the negligence of the driver of a vehicle does not prevent recovery by an innocent passenger applies where the injury results from the combined effect of the driver's negligence and the negligence of another. *Noyes* v. *Boscawen,* 64 N. H. 361, 369. In that case the defendant's negligent maintenance of the highway combined with the driver's carelessness to produce the injury. In *Collins* v. *Hustis,* 79 N. H. 446, 449, it was thought the speed of the train could be found unreasonable and its excessive rate part of the cause of the collision. It was held, therefore, that the plaintiff Collins could recover of the railroad, as she could also of O'Brien, for an injury caused by the joint negligence of both. See *Bowley* v. *Duca,* 80 N. H. 548. This rule, however, does not permit a recovery against a defendant without fault or when the sole legal cause of the injury is the negligence of the driver. There was no specific request for instructions on the latter point and the question argued is here only under the general exception to the motions for a verdict and nonsuit. A verdict should have been ordered against Eva if there was no evidence of defendant's fault or if such fault could not have been found the proximate cause of the injury.

The plaintiffs allege as grounds of negligence in the defendant, (1) excessive speed of the train; (2) failure to have automatic signals or a flagman at the crossing; (3) failure to stop the train in season to allow the motor to pass; (4) failure to give the statutory crossing signals.

The speed with which the train approached the crossing is estimated at between thirty and forty miles per hour. The run of the train was from Manchester to Lawrence 26 miles, the running time

59 minutes with eleven stops. The train was stopped at Canobie Lake station and scheduled to stop at Salem less than a mile beyond the crossing, which was one mile from Canobie Lake. At the whistling post a quarter of a mile before reaching the crossing it was the practice to shut off steam and drift into Salem. The train on this occasion was on time and was proceeding at its usual speed. The crossing as it was approached on the highway was in no way concealed or obscured from the view of a highway traveler. For at least seven hundred feet from the crossing the track was in open view from the highway. The highway travel was light at that hour of the day. There was nothing calling for special protection for this crossing or from which it could be concluded that operating this train in its usual manner over such a crossing in the manner disclosed in the evidence was a breach of the defendant's duty to exercise care for the benefit of travelers on the highway. The circumstances relied upon in *Collins* v. *Hustis*, 79 N. H. 446, and *Speares Sons Co.* v. *Railroad*, 80 N. H. 243, as evidence tending to prove occasion for special protection for the crossing, are not here presented.

Because of the death of the engineer his account of the event is wanting, but it must be found that at some time he sounded the whistle and applied the emergency brake, but did not do so in season to stop the train before the crossing was reached. It was not the duty of the train engineer when he observed the motor approaching the crossing on the highway to stop and allow the cycle to pass. Because that could easily be stopped within a short distance, while the train could be brought to a standstill only with much greater trouble and delay, it was the duty of the highway traveler to stop and allow the train to pass. *Gahagan* v. *Railroad*, 70 N. H. 441, 442. "The general rule is that the engineer has the right of way as against a person approaching a crossing. In the absence of his knowledge of facts reasonably leading to the conclusion that the traveler intends to recklessly go onto the track and commit suicide, or that he is not in possession of ordinary intelligence, or is not governed by the ordinary instinct of self-preservation in the face of imminent danger, the engineer is not bound to stop his train and give the traveler the right of way. He is not chargeable with negligence in not assuming that the traveler will deliberately persist in walking onto the track, for the latter is not in danger until he reaches the track; common prudence would cause him to stop at that point, if not before; and without other evidence of his intention to hazard a passage across the track than is furnished

by the mere fact that he is walking toward it, the engineer is justified in assuming that he will exercise common prudence and stop before reaching the place of danger." *Waldron* v. *Railroad*, 71 N. H. 362, 365; *Stearns* v. *Railroad*, 75 N. H. 40, 45. The only evidence tending to show the engineer's knowledge of the approach of the motor to the crossing is the alarm whistle sounded by him and the application of the emergency brake made by him. There is no evidence tending to show that he did, or ought to have appreciated the danger in season to have stopped the train before the crossing was reached. In *Cavanaugh* v. *Railroad*, 76 N. H. 68, the engineer's testimony furnished evidence of his knowledge of the traveler's danger in season to have prevented the collision. While the highway travelers were not on foot, the machine in which they were traveling could readily be stopped in a short distance. The evidence was that, at the speed with which Adelárd testified he approached the crossing, it could be stopped within ten to fifteen feet. Its continued approach toward the crossing was therefore no evidence that the driver did not intend to stop and allow the train to pass until it came much nearer the point of danger than the point at which the engineer could have stopped the train so as not to pass over the crossing.

The situation which caused the engineer to act when he did is not disclosed, but there is no evidence upon which he could be found negligent for failing to give precedence to the motor cycle.

The last contention to be considered is the claim that the statutory crossing signal was not given. To go to the jury on this question, the plaintiffs were bound to offer evidence tending to show disobedience of the statute, that such disobedience was a breach of a duty due them and that but for such disobedience the collision would not have occurred. *Taylor* v. *Thomas*, 77 N. H. 410, 413; *Davis* v. *Railroad*, 70 N. H. 519, 521. The fireman of the train called as a witness by the plaintiffs testified the signal was sounded at the whistling post required by statute to be placed eighty rods from the crossing. The conductor, baggage-master and two trainmen testified directly to the same effect. Whatever deduction should be made from the weight to be given this testimony because of the witnesses' employment by the defendant it is to be remembered that the defendant was not bound to prove the signals were given, but the plaintiffs had the burden of proving that they were not given. To prove this, two passengers on the train were called, one of whom was reading and the other playing cards, who did not remember hearing the whistle. Another passenger was inquired of

on this point but none of them undertook to say the whistle was not blown. A witness called by the defendant who at a point 400 feet from the crossing saw the cycle and train pass and heard the noise of the passage of both did not remember hearing the whistle.

The evidence from these witnesses, "clearly explainable on other grounds than the failure of the signals themselves, . . . amounts to no more than a *scintilla* which reasonable men could not consider sufficient to counterbalance the direct evidence of the fact." *Collins* v. *Hustis*, 79 N. H. 446, 447; *Kingsbury* v. *Railroad*, 79 N. H. 203, 204; *Gage* v. *Railroad*, 77 N. H. 289, 295. The evidence of the plaintiffs remains to be considered. Eva testifies she saw the train at Canobie Lake; she knew of the crossing beyond; that after crossing the track at Canobie Lake they went along very slowly and the next she knew she was in a sound sleep and was being picked up after the collision. She also testified "when we knew there was a crossing, we looked and listened as usual"; and upon cross-examination that when about 150 feet from the crossing she looked and listened but could not see or hear anything. On this evidence the jury might find that the witness had no accurate recollection of what took place after leaving Canobie Lake. If she looked as she says she did, she must have seen the train, which was then in plain sight, as testified by other witnesses and demonstrated by the meeting on the crossing. It would be also for the jury to consider what weight should be given to the failure to hear, of one who looked and failed to see. But aside from this, according to the law the crossing whistle was required to be given when the train was eighty rods or 1,320 feet from the crossing. On any estimate of the relative speeds of the two subsequent colliders, when the cycle was 150 feet from the crossing the train was far past the whistling post. The fact that Eva did not hear the crossing signal when she listened is no evidence it was not blown at the proper time and place. The evidence of the baggage-master who saw the cycle leaving Canobie Lake, and of the independent witness who saw both train and cycle pass about 400 feet from the station, is that both proceeded at about the same speed, a conclusion confirmed by the fact that leaving Canobie Lake station at approximately the same time they reached the crossing together. If their speed were the same when the crossing signal should have been sounded, both train and cycle were a quarter of a mile from the crossing, and the failure of listeners to hear it when listening after reaching a point 150 feet from the crossing has no tendency to prove the railroad's failure to obey the statute. Adelard

confirmed the testimony of his wife as to listening at a point 150 feet from the crossing and shortly before reaching that point, and testified that when he had reached this point 150 feet from the crossing, he slowed to ten miles an hour and continued at this rate. Assuming this to be true, the train when he listened for the whistle must have been within 450 to 600 feet of the crossing and the time for the statutory signal long past. To sustain the plaintiffs' burden to prove the defendant's fault, the case presents the testimony of four persons otherwise occupied at the time who do not remember hearing the whistle but who decline to say the whistle was not sounded. There is also the testimony of the two plaintiffs who say they did not hear it when they listened but listened only after the time for it had passed.

In *Tucker* v. *Railroad*, 73 N. H. 132, 133, it is said "upon the evidence that two persons who were in a position to hear the bell, if rung, did not hear it, and in the absence of any evidence that the bell was rung or of any explanation of the failure to call witnesses upon that point (*Mitchell* v. *Railroad*, 68 N. H. 96, 117) the finding that the bell was not rung can not be set aside as contrary to reason." In the present case there is direct evidence from several witnesses that the whistle was blown and no evidence to the contrary except from persons whose failure to hear is explainable by their inattention at the time. The fireman also testifies to the continuous ringing of the bell, and there was no evidence to the contrary except from the plaintiffs, who though according to their testimony they looked and listened when 150 feet from the crossing, saw and heard nothing, although the train must have been but a short distance from them where it could be plainly seen and heard. It seems plain that on this evidence reasonable men could not find the burden resting on the plaintiffs to establish the defendant's failure to give the usual crossing signals was sustained.

But if the contrary be assumed the question is, does the evidence authorize the finding that such failure if found was the proximate cause of the collision? What is the proximate cause of an injury is for the jury. Whether there is evidence from which the finding essential to the plaintiffs' case can be made is a question of law. *Gage* v. *Railroad*, 77 N. H. 289, 295; *McGill* v. *Company*, 70 N. H. 125, 129. The purpose of the statutory signal is to give notice of the approach of the train. *Stearns* v. *Railroad*, 75 N. H. 40, 49. The failure to give crossing signals renders a railroad liable only when it is shown such failure is the cause of the injury. 33 Cyc.

1045; *Sublett* v. *Railroad*, 145 Ky. 707; s. c., 38 L. R. A. (N. S.) 1153; *Cosgrove* v. *Railroad*, 87 N. Y. 88, 90. The defendant's duty being to warn highway travelers of their intended use of the crossing (*Gahagan* v. *Railroad*, 70 N. H. 441, 443), there would be no negligence and no breach of duty as to one fully informed of the train's approach. As Eva had intrusted her safety to her husband over whose conduct in driving she had no control, the defendant's duty of warning would be performed by notice to him and negligence could not be predicated upon the failure to inform him of facts known to him. If he looked when near the crossing, as he and his wife testified, he must have seen the train. If he saw the train when he was 150 feet from the crossing the failure of the defendant to warn him when they were 1,320 feet away is entirely immaterial. It is not even a condition upon which Adelard's negligence acted. If Adelard, as the evidence tends strongly to prove, was racing the train to the crossing and with knowledge of its approach attempted to cross in front of it, his act was the sole cause of the collision, whether he acted with care or without, and the defendants would not be liable because no negligent act of the railroad at the time contributed to cause the collision. But if Adelard and Eva are to be disbelieved when they say he looked, he took no efficient action to protect himself or his passenger. The plaintiffs rely upon *Smith* v. *Railroad*, 70 N. H. 53, in which (*p.* 85) the instruction given the jury that it was the injured party's "duty before attempting to cross the track 'to take such precautions to learn of the approach of trains as men of ordinary prudence would take under the circumstances'" is approved, and in which in substance it was held that under the circumstances of that case reliance upon hearing the crossing whistle was sufficient evidence of care in the party injured. In *Doody* v. *Railroad*, 77 N. H. 417, 418, also cited by the plaintiffs, it did not appear that the plaintiff if he had looked could have seen the train. It was not intended to hold in these or other cases in which the question has been considered that there might not be cases in which the failure to look must be found inconsistent with due care.

In *Gahagan* v. *Railroad*, 70 N. H. 441, decided a year later than *Smith* v. *Railroad*, it is said (*p.* 447) of the rule in many cases which requires the traveler to look and listen upon approaching a railroad crossing: "But it has not been suggested that in a case presenting no reason or excuse for failure to exercise such precautions, — in other words, presenting no evidence of such care, or of circumstances which could reasonably be found to constitute care in the

absence of such precautions, — an instruction of this sort would be error. In the present case, in the entire absence of any facts explaining or excusing the plaintiff's failure to take these or any precautions, the instruction requested in the cases cited would be a correct statement of the law of negligence applied to the facts in proof." Gahagan was on foot instead of riding in a cycle. He did not know a train was probably approaching, as did Adelard, only that one might come. Otherwise the cases are indistinguishable. Adelard was clearly negligent in going upon the track as he did. He did not take such precautions as men of ordinary prudence do under such circumstances. For such men do not without reason or excuse drive upon a railroad track upon which they know a train is approaching without looking, when the track is visible for a long distance, to see whether the track is occupied. Adelard's negligence was a sufficient cause for the injury. If the trainmen were negligent in failing to blow the whistle, Adelard's negligent act in attempting to negotiate the crossing when he knew or ought to have known it was occupied by the defendant's engine was a wrongful, responsible, intervening cause which was the sole proximate cause of Eva's injury. *McGill* v. *Company,* 70 N. H. 125, 130.

"It is a principle of law, applicable to the doctrine of proximate cause, that 'if the original act was wrongful and would naturally according to the ordinary course of events prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause passing by those which are innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as a proximate cause, and not to that which is more remote.' Cooley on Torts, *p.* 76." *Currier* v. *McKee,* 99 Me. 364; s. c., 59 Atl. Rep. 442, 443, 444.

But the maxim *causa proxima non remota spectatur* need not be invoked.

Whether the crossing signals were sounded or not, it cannot be found on all the evidence that Adelard approached the crossing in ignorance of the approach of the train. Knowing the train was coming, either because he looked and saw it just before he reached the crossing or because he saw it at Canobie Lake and observed its course substantially parallel to his own for nearly a mile, his attempt to cross when the train was actually on the crossing was the

sole cause of the collision. The evidence clearly establishes he could have prevented the collision either by stopping the cycle or diverting its course just before he struck the engine. As Adelard's act was the sole cause of the collision, it was the sole cause of Eva's injury as well as his own. It could not be found that if the crossing signals had been given, if they were not, that the collision would not have occurred. Because there was no evidence of defendant's fault as the cause of the injuries complained of, the defendant's motions for a verdict should have been granted.

The order in each case is

*Defendant's exception sustained: verdict and judgment for the defendant.*

SNOW, J., did not sit: PLUMMER, J., was absent: PEASLEE, J., concurred: YOUNG, J., concurred in the result.