Cheshire,
Feb. 3, 1925.

JAMES F. PHILLIPS, *Adm'r*, v. BOSTON & MAINE RAILROAD.

EDWARD F. QUALTERS, *Adm'r*, v. SAME.

Positive testimony to the occurrence of a fact by persons in position to observe it does not necessarily so outweigh the negative testimony of persons also in a position favorable for observation as to warrant withdrawal of the issue from the jury. The relative opportunities of the witnesses for observation, and their credibility generally, are peculiarly questions for the jury.

When there is evidence that a collision between the defendant's locomotive and an automobile is due to the concurrent negligence of the defendant and the driver of the automobile, the defendant's negligence may be found to be the proximate cause of injuries suffered by passengers in the automobile.

The negligence of the driver of an automobile, not the servant or agent of his passengers, is not imputed to the passengers.

CASE, to recover for the death of the plaintiffs' intestates, Florence L. Phillips and Charles A. Phillips, caused by a collision, on October 15, 1922, at about eleven o'clock in the forenoon, between an automobile in which the decedents were riding and the defendant's passenger train, upon a grade crossing near Winchester. Transferred by *Allen*, J., upon the defendant's exceptions in each case to the denial of its motions for a nonsuit and for a directed verdict. The actions were tried by jury, together with a third action brought by said James F. Phillips, the husband of his intestate and driver of the automobile, to recover for personal injuries received in the same collision. Verdicts were rendered for the plaintiffs in each of the first two named actions and for the defendant in the personal action. A view was had by the jury. Further facts appear in the opinion.

*Philip H. Faulkner, John J. Landers* and *Chester B. Jordan* (*Mr. Jordan* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

SNOW, J. 1. The grounds upon which the plaintiffs seek recovery are (1) the negligent failure of the defendant's enginemen, upon approaching the crossing, to give the statutory signals, by whistle and bell (P. S., c. 159, s. 6), and (2) the negligence of the defendant in per-

mitting growth upon its right of way to obstruct a traveler's view (P. S., *c.* 159, *s.* 1).

The plaintiffs sought to establish the defendant's failure to blow the whistle at the whistling post by the testimony of the driver of the automobile and of five other witnesses. The defendant, on the other hand, produced several witnesses, including its engineer, four of its other trainmen and employees and two local residents, who testified that they heard the whistle. Practically the same alignment, so far as the witnesses were within its sound, existed as respects the ringing of the bell. The defendant, relying upon *Morier* v. *Hines,* 81 N. H. 48, 53, and *Collins* v. *Hustis,* 79 N. H. 446, 447, seeks to demonstrate in argument that the failure of the plaintiffs' witnesses to hear, in each instance, was so clearly explainable on grounds other than the failure of the signals themselves that their evidence amounts to no more than a *scintilla,* which reasonable men could not consider sufficient to counterbalance its affirmative evidence that the signals were given. But as to the testimony of two witnesses at least the reasoning of these cases does not apply.

A passenger who was riding in the smoker testified with great positiveness that the whistle was not blown and that the bell did not ring; that he was sure the whistle did not blow, and that he called the conductor's attention to the fact at the time of the accident. He justified his knowledge of such failure by the claim that when approaching the crossing he was doing nothing to distract his attention, that he had worked for the defendant and knew where all the crossings were, that he was accustomed to watch the engineer's actions and was very particular about it. A full narrative statement of his testimony upon cross-examination, extracts from which are relied upon to explain his failure to hear the whistle and bell, was in substance that he did not have any special reason to notice whether the whistle blew or the bell rang; that he did not know that he was approaching the crossing, but was supposed to hear the bell when it rang and the whistle when it blew; that he was usually on the watch for the whistle and the bell; that he had a tendency of minding such things; that he did not claim that he was watching for that one whistle particularly; that he was not watching for a crossing at that point, but that he knew they were probably coming to a crossing.

It is to be noted this witness's testimony upon direct examination was not predicated upon the claim that he was expecting the omission of the statutory signals at this particular crossing, but upon his uniform habit and especial care, when riding where he was familiar

with the crossings, to observe whether the engineer performed his duty. His testimony upon cross-examination went to the weight to be accorded to that given on direct (*Taylor* v. *Thomas*, 77 N. H. 410, 413), but did not compel the conclusion that he was not giving the sounding of the statutory signals his habitual attention. His positive statement that the whistle did not blow, accompanied by his uncontradicted testimony that he so advised the conductor at the time, was still evidence to be considered and weighed by the jury who saw and heard him under examination. *Stinson* v. *Railroad, ante,* 473.

The driver of the automobile testified upon direct examination that the whistle did not blow and that the bell did not ring; that he was listening the same as anyone naturally would riding along the road; that he knew of no reason why he could not have heard the whistle if it had blown. Upon cross-examination he refused to admit that it was a usual thing for him to fail to hear locomotive whistles, and expressed his belief that during his three years' experience as a driver he always did hear them. He persisted in his belief that the engine did not whistle and was positive in his statement that the bell did not ring. He must have been in plain view and within hearing distance of the engine and bell while approaching, according to the conflicting testimony, within from 30 to 70 feet of the crossing. As he testified that he looked as soon as the view would permit, it is plain that his testimony was evidence from which it could be found that the bell did not ring.

The plaintiffs submitted evidence that one of the defendant's two resident witnesses could not have observed the train at the whistling post as he had testified, and upon cross-examination sought to weaken the value of the testimony of the other one. The effect of this impeaching evidence, as well as the effect of the interest of the railroad employees on the one hand, and of the direct interest of the plaintiff driver and the friendly interest of his passenger witness on the other hand, presented questions of fact as to the weight to be given to the evidence of each, which were peculiarly within the province of a jury. It cannot be said, as a matter of law, that reasonable men could not have found on the evidence that one or both of the statutory signals were not given. This conclusion renders it unnecessary to deal with the question of the alleged negligent maintenance of the crossing, and it has not been considered.

2. The defendant further contends that the failure to give the statutory warnings cannot be found to be the proximate cause of the

accident, but on the contrary that it conclusively appears that such proximate cause was either (1) the negligence of the driver in failing to proceed at a speed which would enable him to stop his car in season to avoid a collision after he saw the train, or (2) the unexpected failure of his brakes to work. These issues necessarily involve a review of the evidence of the essential facts of the accident.

The view of the highway traveler approaching the crossing was substantially cut off by tall growth until he passed within the bounds of the railroad location, which was sixty feet from the track. The distant view of the train was further curtailed by a cut through which the train approached, 141 to 188 feet from the crossing. A growth of weeds and small bushes along the shoulder of the cut, which inclined toward the highway, tended to obstruct the traveler's view of the rails and the lower portions of an approaching train. There was evidence that on the day following the accident obstructing growth was removed, the stubble of which it is claimed was pointed out to the jury at the view. Notwithstanding, therefore, that tests made a year after the accident demonstrated that a man standing in the highway 60, 50, 40 and 30 feet from the crossing could see a handkerchief suspended fourteen feet above the rails 231, 234, 309 and 486 feet, respectively, down the track, it could nevertheless be found, upon the testimony of men accustomed to use the crossing, that at the time of the accident it was difficult for a moving traveler to observe the upper portions of an approaching engine until he was "within 50 to 60 feet" of the crossing, or to see any substantial portion of the engine or train until he was "pretty close" to the track.

The driver testified that he had taken this road because the family wanted a longer ride home, and was proceeding without occasion for haste; that within a half mile of the crossing he observed by his speedometer that he was traveling only fifteen miles an hour; that a quarter of a mile away he knew he was approaching a crossing and decreased his speed; that he was familiar with the law making it unlawful to approach within one hundred feet of a crossing at a greater speed than ten miles an hour (Laws 1917, c. 88, s. 2), and was attempting to obey it; that he brought his car within the statutory speed in order to stop if a train should be coming; that he was familiar with the crossing and with the view to be had; that he had this in mind as he approached the crossing; that he also had in mind that it was necessary to keep a lookout as he went toward the crossing and to keep his car in a position so that he could stop it if he should see a train coming; that he knew a train was due at some time that

forenoon though he didn't know the exact time; that as he came out toward the crossing he looked to his right, because he wasn't sure whether or not the train had passed; that he looked as soon as he could and as quick as it was possible to see down the track; that he was looking in that direction all the time as he went toward the crossing; that he was aware that the train might be coming there, and was watching·out for it carefully; that the brakes were all right that morning, and at the time of the accident, for anything he noticed; that they responded to his application and that he had his car under full control; that knowing that a train might be coming at any instant, he was fully prepared for an emergency, with his foot upon the brakes; that he first saw the front end of the engine when he was some thirty feet from the crossing; that he thinks he saw it as soon as a man riding along in a car that way could see it; that he applied both brakes and attempted to reverse his engine; that with the road as he found it, he would expect to be able to stop the car within a car length (eleven feet six inches) and certainly ought to in two car lengths, without sliding his wheels; that he cannot explain why he didn't stop within two car lengths unless grease got into the brake bands. The plaintiffs' evidence showed that immediately following the accident the roadbed disclosed that the left wheel of the automobile had dragged for a distance from twenty-five to thirty-five feet to a point within six to eight feet from the rails, and that the engine struck the front end of the car at the forward hub.

The defendant's contentions are based upon an assumption that it conclusively appears from the foregoing that the driver had all the information that would have been conveyed to him by the statutory signals (*Morier* v. *Hines, ante,* 48, 55), and that there is no evidence from which it could be found that he would have acted differently than he did had they been given. Assuming that the driver's testimony must be accepted as conclusive, neither of the defendant's conclusions necessarily follows. His testimony was, not that he knew a train was coming, but, at best, only that he knew a train was due sometime that forenoon and might be coming. On the contrary he testified that he did not know whether the train had passed. It could be found that the action of an approaching traveler would have been quite different in the face of a positive warning of the immediate presence of an approaching train than where, as in the instant case, he was merely anticipating its possible passing. As it was, the train struck the automobile at the hub of the front wheel as it was coming to a stop, if in fact it had not stopped. The jury may

have found on the evidence that the earlier and positive information of the train's approach, which would have been conveyed by the sound of the whistle or bell, would have induced earlier and more effective action by the driver, which in turn would have sooner brought the car to a stop and thus have avoided the accident.

The uncontradicted evidence was that the train was traveling twenty-eight to thirty-five miles per hour. The defendant's fireman testified that when the front of the engine was within from eighty to ninety feet of the crossing, he observed the automobile as it emerged from behind the obstructing growth, at possibly an equal distance from the crossing, coming at a rate of speed too fast to stop in season to avoid a collision. If the jury believed this evidence there was no unexplained failure of the brakes. There is no claim that the decedents, or either of them, were negligent, and the negligence of the driver cannot be imputed to them. *Collins* v. *Hustis*, 79 N. H. 446, 449, and cases cited. Upon this theory of the evidence, it could, therefore, be found that the accident was due to the concurring negligence of the defendant and the driver, and that, as respects plaintiffs' intestates, the negligence of the former was the proximate cause of the accident. Where there is evidence upon which a conclusion may be based, the issue of proximate cause "is essentially one of fact, and is so treated in this jurisdiction." *Derosier* v. *Company, ante,* 451.

*Exceptions overruled.*

ALLEN, J., did not sit: the others concurred.

---

### MEMORANDUM

MR. JUSTICE YOUNG, having attained the age of seventy years on the twenty-sixth day of January, 1925, retired under the constitutional limitation.

On the twenty-seventh day of January, 1925, MR. THOMAS LITTLEFIELD MARBLE was appointed an associate justice of this court to fill the vacancy occasioned by the retirement of MR. JUSTICE YOUNG, and took his seat upon the bench at the February session, 1925.