Coös
Feb. 7, 1933.

CLEOTA H. MORRISON, *Adm'x v.* BOSTON & MAINE RAILROAD.

*Coulombe & Coulombe, Clifford & Clifford* (of Maine) and *Ira W. Thayer* (*Mr. Ovide J. Coulombe* orally), for the plaintiff.

*Irving A. Hinkley* (by brief and orally), for the defendant.

ALLEN, J.   I. Regarding the motion for a directed verdict, the following facts may be stated.   The decedent was driving a motor truck over a highway running northeasterly and was struck on a main track crossing by the defendant's train traveling westerly.   A side track some 8 feet southerly of the main track extended over the crossing, and some freight cars were standing on it.   From the crossing to the nearer end of the nearest car was not less than 70 and not over 105 feet.   These cars and a bush on premises south of the railroad obscured the view of the oncoming train given one traveling in the direction of the decedent.   But for a distance of over 100 feet from the main track crossing the view of the tracks from the crossing to the freight cars was clear.

According to the evidence for the plaintiff the truck was driven upon the side track slightly to the right of the center of the crossing,

swerved to the left as soon as the forward wheels had crossed the rails of that track, and was struck on the side at the cab and about midway of the westerly half of the main line crossing.

The defendant's negligence might be found. If the proper warning signals of the train by whistle and bell were given, yet its excessive speed might be inferred. The evidence of a speed of 40 to 45 miles an hour supported more than a conjectural inference of the speed. The witness who testified to it was seated at a place where he had a clear view of the train for the space between the freight cars and the crossing. The speed was admittedly greater than that of most trains in coming to the crossing, stopping as they did at the station some 10 or 12 rods easterly of the crossing, while this one did not. The witness observed this difference and, conceding it to be very difficult to estimate the speed correctly, yet regarded his estimate as good as the average man's. Especially with account taken of the obstructions to a view of the train from the highway and of the customary stopping of trains at the station, the sufficiency of the evidence of an improper speed is clear.

As to the decedent's blame, his speed as he approached and drove upon the crossing is in dispute. The defendant relies upon the statute (P. L., c. 249, s. 22) making it a misdemeanor to drive at a speed of over 10 miles an hour when approaching and within 100 feet of a railroad crossing of which specially prescribed warning notices have been given, and asserts that the evidence demonstrates the violation of the statute. The assertion overlooks the trier's duty to reject uncontradicted evidence if it is not believed and does not require acceptance. *Andrew* v. *Goodale*, 85 N. H. 510. Considering the jury's authority to discount and discredit testimony, a speed forbidden by the statute was not definitely proved.

The burden of proving such a speed rested upon the defendant. While the statute (P. L., c. 328, s. 13) states in terms that contributory negligence is to be proved as a defence, its purpose and scope have been understood to include any common-law or statutory fault of the person injured contributing in fact to his injury. *Hanscomb* v. *Goodale*, 81 N. H. 150, 151, 152; *Judd* v. *Perkins*, 83 N. H. 39, 42. The distinctions between contributory negligence and contributory illegality as judicially recognized and adopted are not thought to have been a legislative consideration in the enactment of the statute. It is not probable that in changing the burden of proof it was meant to limit the change to contributory negligence as defined by the courts. In the statutory use of the term reasonable consistency leads to a com-

prehensive inclusion of all contributory fault. As the term is capable of such a construction, the spirit of the statute invites a definition adopting it without abridgment.

If the decedent obeyed the statute, a conclusion that he was negligent is not compelled. Even if the train signals were given, the law does not impose an inference that he heard or in due care would have heard them. He was familiar with the crossing and it was not a regular time for a train. The train was a special one and as has been said, made no stop at the station as most trains did. He was driving a lumber laden truck. He may have been reasonably attentive to the situation and yet not have heard the signals. If he proceeded towards the crossing within the statutory speed limit, the obstructions to a view of the train may have caused him to be unaware of it until he was close to the tracks. There is no rule of law that because the view was shut off, he should have stopped and listened or otherwise investigated in some particular manner. While he was required to take greater precaution in other ways than if he had a clear view (*Bursiel* v. *Railroad*, 82 N. H. 363, 365), this means only that if care in some respect is unavailing, care in other ways which are availing should be used.

If the testimony of the train's speed of 40 to 45 miles an hour is adopted, it was a matter of 2 or 3 seconds for it to travel 120 to 200 feet. If the decedent's speed was 10 miles an hour or less, he traveled not over 45 feet in that time. A conclusion that he saw or should have been aware of the train before he was that distance or somewhat less from the crossing is not required. Employing the emergency doctrine in passing on his care, it is not a matter of law that he was at fault in his conduct after he realized his danger. The time and distance within which the truck could be stopped does not appear. A more or less instinctive effort to cross the track ahead of the train may have been a chance which care would not condemn.

Unless he was close to the tracks when first aware of the train, care on his part would have saved him. With any sort of watchfulness, if not sooner hearing the train, he would have seen it as soon as the freight cars ceased to obstruct its view. He might readily have turned to the right where there was ample open space, if there was insufficient time for stopping the truck short of the crossing. But where he was when the train first came in sight, whether he should sooner have been aware of it, whether he should have taken more precaution than he did, and what his opportunities for securing safety were after discovering it, cannot be definitely and positively told.

A finding that the decedent's speed was within the statutory limit or that he was careful would be wholly conjectural. But the evidence of excessive speed or negligence falls short of absolute proof. If accepted, proof would follow, but its acceptance is the jury's function. While they could not find him free from fault, they might not be satisfied to charge him with it. Since there may have been an emergency which the decedent did not carelessly help to create and in which he did not carelessly act, the burden of proving his fault has not been sustained to the point of complete demonstration.

The case differs from that of *Collins* v. *Hustis*, 79 N. H. 446, in which it conclusively appeared that the train was visible to the driver of the automobile in season for him to stop if he used care in proceeding towards the crossing. And in the cases of *Morier* v. *Hines*, 81 N. H. 48, and *Bursiel* v. *Railroad, supra,* the conduct and knowledge of the plaintiffs was so clearly disclosed as to make their negligence the only reasonable deduction to draw.

II. The last chance doctrine was submitted to the jury. This was error, in view of the evidence. The inferences from the evidence best inuring to the plaintiff's advantage are these. The train and the decedent were both approaching the crossing at the same speed of 20 to 25 miles an hour and at the same distance from it. The fireman first saw the decedent when he passed the westerly end of the freight car nearest the crossing. This at most made a distance of 105 feet from the crossing. The plaintiff's claim that the fireman testified to seeing him sooner and when opposite the station is not sustained by the record and involves a confusion between question and answer. The engine and tender being 60 feet in length, the front of the engine was about 30 feet ahead of the cab, and hence within 75 feet of the crossing. At the train's speed of 30 or more feet a second it took but little over 3 seconds for it to reach the point of collision. The truck was struck on its side at its cab.

There is no evidence of any causal failure to use care on the part of the fireman or engineer after the decedent's inattention was first noticed. The time was too short in which to slow the train's speed so the truck might safely pass over the crossing ahead of it. The fireman's warning was given as soon as the inattention was observed. The engineer applied the brakes as soon as he received the warning. The evidence tends to show nothing to the contrary. The plaintiff's position defies the natural limitations on the speed of the mental and physical activities of human beings. The last chance must be a clear one, reasonably found to be fairly given.

III. Other exceptions are considered only so far as decision upon them is thought to be of probable aid in a retrial. One relates to the sufficiency of the evidence that the train signals of whistle and bell were not given. One witness testified that she was watching the train and listening to it before it passed the station without hearing warnings then due to be given, although in a position to hear them. This testimony, if in some respects inconsistent with her other testimony, made the issue one for submission to the jury. Her attention was directed to the matter at the time and the opportunities for hearing were favorable. This made it reasonable to find that if the signals were not heard, it was because they were not given. *Stinson* v. *Railroad*, 81 N. H. 473, 474; *Phillips* v. *Railroad*, 81 N. H. 483, 484, 485.

IV. The court admitted the testimony of the keeper of an inn near the railroad that he had complained to the defendant's agents of the practice of leaving freight cars standing on the side track because of their interference with the view. It did not appear that the interference was complained of as a danger to highway travel rather than as an unsightly disturbance of the enjoyment of the inn. Since the complaints called no attention to the danger the practice created, they did not tend to charge the defendant with notice of it. The evidence should have been excluded.

V. The engineer of the train was asked if in his opinion he made a good stop and answered affirmatively. On motion the answer was stricken out. The evidence was competent if it was of aid to the jury. *Davis* v. *Railroad*, 75 N. H. 467. Whether the court could find that it would not aid them, seems doubtful. The witness being a general one, his interest as an employee of the defendant was for the jury's consideration. If he had been asked what if anything he could have done to stop the train sooner, it is difficult to see how it could be said his answer would probably not help the jury in passing on his conduct (*Reed* v. *Company*, 84 N. H. 156, 161; *Dimock* v. *Lussier*, *ante*, 54) and the question asked comes substantially to this inquiry.

VI. To a statement in the charge that it was uncontradicted that no other train had passed the station for several years without stopping, the defendant excepted. The statement meant that there was direct assertive evidence that all other trains thus stopped. No one so testified. Evidence from which the stopping of the other trains might be inferred did not justify the court in drawing the inference. It was a matter for the jury.

VII. The instruction that a special speed of the train might be considered in connection with the decedent's care was proper. He

was shown to have traveled over the crossing to an extent from which his knowledge of normal train movements might be found, and such knowledge would have bearing on his care in respect to anticipation.

VIII. The jury were instructed that the decedent's capacity to earn money "for the benefit of those naturally dependent upon him, or for the benefit of his estate," was to be estimated in any award of damages. In its alternative statement the instruction implies some allowance to one's natural dependents during his normal expectancy of life out of his surplus earnings. This is a proper direction. The measure of damages is not alone how much the decedent living out his normal expectancy would probably leave for the statutory beneficiaries from his earnings, but is as well how much he would do for them therefrom while living. How much was his earning capacity altogether worth to them, is the inquiry. "Their only prospective right or interest in his earnings was to what he would spend upon them or leave as an estate." *Morrell* v. *Gobeil*, 84 N. H. 150, 153, 154. As usually phrased the loss to the decedent's estate by the destruction of earning capacity is the measure of damages. In exactness it is not the loss to the estate (*Cogswell* v. *Railroad*, 68 N. H. 192, 194; *Hinman* v. *Director-General*, 79 N. H. 518, 519), but to those for whose benefit the action is brought, that is to be ascertained.

IX. The defendant requested an instruction that it was the decedent's duty "to look and listen for approaching trains, and not to attempt to occupy this crossing at a time when the train was approaching or about to pass over same." The request called for an instruction of particular conduct to meet the demands of care. While it is the law that it is negligent to exercise no care at all when the average person ordinarily takes some care, the definite measures of the care to be taken are not judicially prescribed. The cases cited to support the request are of situations where there could be no reasonable disagreement as to the failure of care. The instruction was properly denied.

X. Request was made for an instruction that if the decedent saw or in due care would have seen the locomotive as it came past the freight car nearest the crossing, recovery was barred. As already appears, the decedent's distance from the tracks when he was first chargeable with notice of the train was not definitely shown. It was for the jury to say where he was and if care on his part would then have saved him.

XI. Another request sought an instruction that the decedent's familiarity with the crossing required him to take care to ascertain

if a train was coming and not to undertake to go over the crossing ahead of it if it was. The request assumes that the decedent's discovery of the train was in such season as to make it careless for him not to let the train precede him over the crossing. The assumption not being a necessary inference from the evidence, the request was properly denied.

XII. An instruction was sought that a train has the right of way over a highway crossing, it being the highway traveler's duty to stop and let the train pass and not the engineer's duty to stop his train to let the highway traveler precede it. Modified by proper limitations, the right is well established. The traveler may in prudence undertake to pass ahead of the train, and the engineer may not regard the train's right of way as absolute. Subject thereto, the right defines an adjustment of use of a crossing. *Gahagan* v. *Railroad*, 70 N. H. 441; *Morier* v. *Hines*, 81 N. H. 48; *Fraser* v. *Railway*, 84 N. H. 107. The court adverted to the relative use of a crossing by traveler and train, saying that each must take the situation as found and act accordingly. But the train's right of way as an element of the situation was not stated. Although the request defined the right too broadly, it called the court's attention to a substantial point of defence, as to which the defendant was entitled to have proper instructions given. *Burke* v. *Railroad*, 82 N. H. 350, 361-363.

XIII. Other requests assumed facts relating to the decedent's conduct as proved when they were for the jury's determination. One assumed that he drove upon the crossing without looking to see if a train was coming and one assumed that the train's speed was no greater than his.

*New trial.*

All concurred.