Merrimack,
May 2, 1944. } No. 3465.

GLADYS GATES, *Adm'x v.* BOSTON & MAINE RAILROAD.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

BURQUE, J.   The accident happened March 4, 1940, at a grade crossing, known as Boyce's, in Canterbury, between 1:54 and 2:00 P.M.   The weather was clear and visibility good.   The railroad track was perfectly straight for at least ¼ of a mile on each side of the crossing and ran approximately north and south.   The highway for a distance of 1,200 feet as it approached the crossing was practically straight, ran from northeast to southwest and intersected the cross-

ing at an angle of approximately 55 degrees.    The land lying northerly of the highway and easterly of the railroad track is all open grass land, except for a few clumps of bushes, not sufficiently high to interfere with the view, and none for a distance of 250 feet to the crossing. From a distance of 512 to 339 feet east of the crossing, a traveler in the highway has a clear view of the track 1,287 feet north of the crossing; and from a distance of 221 to 72 feet, 1,459 feet.    This was the view available to Gates, who was traveling westerly in the road while the train was traveling southerly.    From a point 700 feet away from the crossing the highway traveler has a good clear view of the same.    Gates was somewhat familiar with the crossing.    The train was on time and running at a speed of 40 miles per hour.    The evidence most favorable to the plaintiff is that Gates was operating his truck at 25 to 30 miles per hour.    The truck was struck on its right side about two to three feet from the rear end of the body.    The right front end of the motor car came in contact with the truck.

It is conceded that the operator (hereinafter referred to as the engineer) of the gas-electric motor car (hereinafter referred to as the train) sounded the whistle from the whistling post, 1,320 feet away from the crossing.    Whether he gave just the regulation two long and two short blasts, or gave a series of short blasts, is in dispute. Taking the evidence most favorable to the plaintiff, the engineer gave a series of short blasts from a point at least opposite the fifth pole north of the crossing, a distance of 647 feet away.    The truck, according to the witness who testified to the above, was then a distance of about 150 feet from the crossing.    On this supposition, the train, in order to reach the crossing at the same time as the truck, had to be traveling at least four times as fast as the truck, or at a minimum speed of 100 miles per hour.    Such a proposition would be absurd and preposterous, to say the least, so much so that the plaintiff places no reliance thereon.    This same witness testifies that the train and the truck appeared to be traveling at the same speed.    If so, it would follow that the truck then had to be at the same distance away from the crossing as the train was.    Conceding the truck was traveling 25 to 30 miles per hour, it had to be at least 375 feet away from the crossing, for at 25 miles per hour it covered 37½ feet per second, while the train traveling at a speed of 40 miles per hour covered 60 feet per second, and consequently required approximately 11 seconds to cover the 647 feet in the same length of time as it would take the truck to cover 375 feet; and at 30 miles per hour the truck traveled 45 feet per second, so had to be more than 450 feet

away from the crossing when the train was 647 feet away. If this same witness' testimony is the correct version of the accident—to wit, that the train and the truck seemed to be traveling at the same rate of speed, then both were equidistant from the crossing.

Two other witnesses testified they heard anywhere from 10 to 15 sharp blasts of the motor car's whistle. From this line of testimony the plaintiff argues that it can be found the engineer saw Gates approach, even before the train reached a point 647 feet away from the crossing, and that he should have slowed the train down, and even stopped, if necessary to avoid the collision. In the absence of any other evidence to support such a claim, the contention is untenable. Ever since *Gahagan* v. *Railroad*, 70 N. H. 441, 443, it has been well established in this State that everything being equal, the railroad at a grade crossing has the right of way over highway travelers. *Waldron* v. *Railroad*, 71 N. H. 362, 365; *Morier* v. *Hines*, 81 N. H. 48, 51; *Fraser* v. *Railway*, 84 N. H. 107, 112; *Morrison* v. *Railroad*, 86 N. H. 176, 183; *Rideout* v. *Railroad*, 92 N. H. 340, 343; and that there is no duty imposed upon the railroad to slow down or stop its train when approaching a grade crossing until such time as it becomes apparent to the engineer that the highway traveler is not going to stop and give the train the right of way. *Waldron* v. *Railroad, supra; Morier* v. *Hines, supra; Lavallee* v. *Railroad*, 89 N. H. 323, 326; *Craig* v. *Railroad*, 92 N. H. 408. See also, *Stearns* v. *Railroad*, 75 N. H. 40, 45.

A finding that Gates was guilty of contributory negligence as a matter of law is compelling. The Presiding Justice was correct in so ruling. Either Gates did not look or listen to the signals or else he undertook to pass ahead of the train knowing of its approach. Failure to slacken his speed caused the witness who saw the train and the truck to exclaim, ". . . ain't that truck going to stop," perfect proof that Gates was either wholly inattentive or was going to try and get over the crossing ahead of the train. Whichever version is adopted we are confronted with the following: had Gates looked he would have seen. Not having slowed down or done anything for his own protection, the only reasonable conclusion that can be reached is that he did not look and consequently was negligent for not having done so. *Collins* v. *Hustis*, 79 N. H. 446, 447, 448; *Hussey* v. *Railroad*, 82 N. H. 236, 240; *Bursiel* v. *Railroad*, 82 N. H. 363, 369. Had he listened he would have heard. If he did not hear because the windows of his truck were closed, or because his truck made so much noise that he could not hear, or both, he was negligent for creating

this perilous situation and for not taking precaution to protect himself against what should have been an expectable and anticipated danger. *Archibald* v. *Railroad*, 92 N. H. 184, 188. It is to be noted that the witnesses who testified to having heard the short blasts of the whistle were in the old depot then converted into a home located on the south side of the road east of the crossing, and that the windows in the building were closed. And again if Gates " observed the train and attempted to cross in front of it and the collision resulted from his miscalculation of the speed of the train and the probable operation of his machine, as is quite probable, he voluntarily put himself in a place of danger of his own motion and cannot recover for the results of his own act." *Collins* v. *Hustis, supra,* 448, and cases cited.

Were this not enough we have the fact that Gates approached the crossing at an unabated speed. This was in violation of Laws 1933, *c.* 15, *s.* 1 (R. L., *c.* 119, *s.* 18), which provides that "Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing." That Gates's failure to reduce his speed and proceed cautiously over the crossing was a contributing cause of the collision cannot be denied, for had he slowed down ever so little, there could not have been any collision. Violation of a statute when a causal factor contributing to an accident constitutes legal fault. *Jewett* v. *Holt, ante,* 163; *Frost* v. *Stevens,* 88 N. H. 164, 167, and cases cited. See *Woodbridge* v. *Desrochers, ante,* 87. "If his illegal conduct contributed to his injury, it is to be treated in the same manner as contributory negligence and bar recovery." *Hobbs* v. *Railroad,* 88 N. H. 112, 113.

It follows that the only ground upon which recovery could be had was on the claim advanced by the plaintiff that the defendant had the last clear chance to avoid the accident. We are of the opinion that this position cannot be maintained for the reason there is no direct evidence in the case to warrant a finding that the engineer "was actually aware" of the presence of the truck, or that if he did see it, "he was aware that the driver was ignorant of his peril" (*Archibald* v. *Railroad,* 92 N. H. 184, 188), and that "after discovery of the situation, due care required and time afforded an opportunity" on the part of the engineer to avoid the accident. *Clark* v. *Railroad,* 87 N. H. 36, 38.

The last clear chance doctrine, as developed in this State, is

well stated in the latter case. It is to the effect that "there must be evidence from which the jury might find the following facts: 1. That the one to be charged with liability was actually aware of the other's presence. 2. That he was actually aware that the other was either ignorant of the peril or unable to extricate himself from it. 3. That, after discovery of the situation, due care required and time afforded an opportunity for saving action." Applying these principles of law to the case at bar, we are confronted with the following situation: Gates was approaching the crossing at a findable speed of from 25 to 40 miles per hour. The train was approaching at a speed of 40 miles per hour. Granting that the engineer saw him when his train was at least at pole 5, 647 feet away from the crossing, a conclusion that might be drawn from the fact that he is claimed to have given sharp whistling blasts to notify Gates of the train's approach, and that the engineer can be said to have become aware at some time that Gates would not stop, at what distance from the crossing was the train when this occurred? We have seen that the train had the right of way. Further, "the engineer had the right to assume and expect that any one approaching the crossing in an automobile would do so with care, and at a reasonable and proper rate of speed, so that if a train was approaching he could stop in time to avoid a collision." *Rideout* v. *Railroad, supra.* When then can it be said that the engineer should have realized and did in fact realize the truck driver would not so act? The engineer says he did not see the truck until it was on the crossing, concededly too late to stop the train, as it would take a distance of from 550 to 575 feet to stop at the speed it was traveling. Should the engineer have seen the truck? If he should, but did not, this is only an act of negligence on the part of the engineer for which the defendant is not liable, because of concurrent negligence on the part of Gates (*Gahagan* v. *Railroad,* 70 N. H. 441, 444; *Cavanaugh* v. *Railroad,* 76 N. H. 68, 71; *Bonnin* v. *Railroad,* 77 N. H. 559, 562); and further because in the last clear chance doctrine, it is not a question whether the party sought to be charged should have discovered the injured party's dilemma but whether he in fact did. *Clark* v. *Railroad, supra.*

If the engineer did see the truck, and realized it would not stop, when did this happen and where was the train at the time? Did he then have the time and opportunity to avoid the accident? There is nothing in the evidence to prove any of the above points. To allow the jury to determine these questions would be to allow it

to explore in a field of pure guess and conjecture. This is not permissible. *Rideout* v. *Railroad, supra.* If it is the law, as it undeniably is, that one has the right to rely upon the other acting in accordance with the rights of both (*Lyman* v. *Railroad*, 66 N. H. 200, 203); that in the operation of motor vehicles one has the right to assume that other drivers will use due care, unless there is reason to believe otherwise (*Rouleau* v. *Blotner*, 84 N. H. 539, 540; *Lovett* v. *Railway*, 85 N. H. 345, 350), it must necessarily follow that one has the right to rely upon compliance with statutory provisions regulating traffic under certain conditions. *Gendron* v. *Glidden*, 84 N. H. 162, 168. The engineer had that right in this case. If it can be said that the engineer was in error in thinking that the truck would give way to the train, we certainly can find no ground for charging the defendant with negligence. *Carney* v. *Railway*, 72 N. H. 364, 372; *Morris* v. *Railroad*, 85 N. H. 265, 277; and cases cited. See also, *Folsom* v. *Railroad*, 68 N. H. 454, 460.

It therefore follows as a last analysis, that plaintiff's decedent, Gates, being guilty of contributory negligence as a matter of law, and the last clear chance doctrine having no application under the facts in the case, defendant's motion for a directed verdict in its favor should have been granted.

*Judgment for the defendant.*

All concurred.