Coös, }
March 7, 1916. }

### Charles A. Hamlin & a. *v.* Augustus E. Philbrook.

Where one owns a building, erected by permission upon the land of another, subject to a written agreement whereby the landowner may acquire title thereto upon written notice to appoint appraisers of the property and the payment of their award, the owner of the building has, until such appraisal and payment, a possession of the building sufficient to entitle him to maintain trover for its conversion.

If without such notice and appraisal, the landowner takes possession of the building he is liable in trover to its owner.

The jury are presumed to have obeyed the instructions of the court to disregard the unwarranted statements of counsel.

Trover, for converting a camp and its contents. Trial by jury and verdict for the plaintiffs. Transferred by *Sawyer*, J., from the April term, 1915, of the superior court on the defendant's exceptions (1) to the denial of his motion for a directed verdict, (2) to the charge and (3) to statements made by the plaintiffs' counsel in his closing argument. The plaintiffs built this camp on land belonging to Hamlin's father and when he sold it to the defendant they continued to occupy under the following agreement made by them with the defendant:

"Memorandum of agreement made and concluded the 15th day of November, A. D. 1912, by and between Augustus E. Philbrook of Shelburne, in the County of Coös and State of New Hampshire, party of the first part, and Charles A. Hamlin of Gorham and Henry Olson of Berlin, both in said County of Coös, parties of the second part: Witnesseth, that whereas said Augustus E. Philbrook has recently acquired by purchase the real estate, in said Shelburne, upon which is located by consent of the former owner of said land, a building or camp, belonging to the parties of the second part.

"Now, Therefore, it is mutually agreed by the said contracting parties as follows, viz.: That said building or camp may remain as now located with permit to use the same in a reasonable and proper manner, with access to and from as long as the said Augustus E. Philbrook, his heirs, administrators or assigns may permit and consent, and he, or they, may end such occupancy and direct that said building or camp be removed by giving said parties of the second part, their heirs, administrators, or assigns three (3) months' notice in writing.

"Should the parties of the second part, or their representatives neglect or fail to remove said building or camp upon such notice, or conclude to sell the same, then said E. A. Philbrook, or his representatives, or assigns, shall name one appraiser, the said Hamlin and Olson, or their representatives, or assigns, shall name one appraiser, and the two appraisers so named shall select a third appraiser, and the three parties thus selected shall forthwith examine and appraise the cash value of said building or camp, and report to the parties in interest their finding assessing the value of said building or camp without any betterments from the date hereof, and the party of the first part, or his representatives, shall at once pay over, or tender to the parties of the second part, or their representatives, the sum so determined upon, and reported by said appraisers and upon such payment or tender he or they shall become the absolute owner of said building, or camp, and all rights under this agreement."

The defendant saw one of the plaintiffs in April, 1914, and told him that he wished to terminate the agreement and they attempted at that time and on one or more subsequent days to agree on the value of the camp. Failing in this, the plaintiffs notified the defendant on May 10th that they had selected Mr. Rahmanop as their appraiser. The next day the defendant sent them the following notice:

"To Charles A. Hamlin and Henry C. Olson of Gorham in the County of Coös and State of New Hampshire:

"You are hereby notified and directed, according to the terms of an agreement between us dated November 15th, 1912, to remove before August 13th, A. D. 1914, next, the building or camp referred to in the aforesaid agreement, from my land in Shelburne, in said County of Coös.

"Should you, however, fail to remove the same, or conclude to sell to me, then I, under the condition of said agreement, name as appraiser on my part, Seymour C. McAllister of Shelburne, aforesaid.

"Failing to remove the aforesaid building, or camp, you are notified to name the appraiser on your part, advising me in writing of the same, so that the third appraiser may be appointed, so that the value of the said building or camp may be determined, as set forth in the agreement aforesaid, between us."

On the morning of August 14, the defendant told McAllister to select two men to act with him in appraising the camp and the appraisers so selected valued it at one hundred dollars. The de-

fendant took possession of the camp and tendered the plaintiffs one hundred dollars, and told them that if they came on his land he would prosecute them.

*Rich & Marble* (*Mr. Marble* orally), for the plaintiffs.

*Alfred R. Evans* and *Drew, Shurtleff, Morris & Oakes* (*Mr. Morris* orally), for the defendant.

Young, J. If the words the parties used are given their ordinary meaning, the plaintiffs were entitled to the possession of the camp until it was appraised in accordance with the terms of the agreement and until the defendant had paid or tendered them the amount of the appraisal. If, therefore, the defendant's contention that a right to the possession of the property is necessary in order to maintain trover is sound—a question as to which no opinion is intended to be expressed—it can be found that the defendant converted the camp and its contents when he took possession of it as his property. *Gove* v. *Watson*, 61 N. H. 136. This disposes of the exception to the denial of his motion for a directed verdict and to the charge.

Even if there was no evidence to warrant counsel's statement in respect to the "benevolent millionaire," what was said furnishes no reason for disturbing the verdict; for the court instructed the jury not to consider the statement for any purpose unless there was evidence to sustain it, and it must be assumed the jury obeyed instructions.

The defendant's second and third exceptions were to statements criticising the defendant; and it is enough, in so far as these exceptions are concerned, to say that if the plaintiffs' evidence is to be believed the statements were unobjectionable. It was fair to ask the jury to find from the way the defendant got possession of the camp that he was attempting to get it without paying for it; also that the plaintiffs were justified in thinking that if they attempted to remove their property from the camp there was nothing he would hesitate to do to prevent it. In short, the reasonable conclusion to be drawn from the plaintiffs' evidence is that the defendant was attempting to cheat them and that there were no lengths to which he would not go to effectuate his purpose, and that is all counsel was asking the jury to find when he made the statements.

The defendant's fourth exception was to counsel's statement that, if they (the jurors) asked the defendant's attorney after the

trial whether the camp became the defendant's property the instant the clock struck twelve on the night of August 13th, he would say, no.    If it is' conceded there is no evidence to warrant this statement, that furnishes no reason for disturbing the verdict; for as has already appeared the camp did not become the defendant's property at that time and had not become his property at the time of the trial and that was all counsel was asking the jury to find when he made this statement.

*Exceptions overruled.*

All concurred.