Rockingham, ⎱
March 2, 1926. ⎰

### LORA E. WILLIAMS *v.* BOSTON & MAINE RAILROAD.

### EDWIN COLLISHAW *v.* SAME.

### CHARLES E. WILLIAMS, *Ex'r,* v. SAME.

### LORA E. WILLIAMS, *Adm'x,* v. SAME.

A case having been submitted to the jury upon several issues of fact, without a motion to withdraw any of the issues, if the evidence as to one of them warranted its submission to the jury the question whether the other issues should have been submitted will not be considered in this court upon exception to denial of defendant's motion to direct a verdict.

Failure of a locomotive engineer to give the statutory crossing signal may be found to be the proximate cause of injury by collision, to a traveler on the highway not fully informed of the approach of the train.

The negligence of the driver of an automobile cannot as matter of law be imputed to his wife, if it does not conclusively appear that she was not justified in entrusting her safety to him; nor can it be imputed to his infant child, so young as to be incapable of exercising care.

An averment in argument is unobjectionable if it is not an attempt on the part of counsel to testify, but merely a forceful statement of a conclusion fairly inferable from the evidence.

ACTIONS OF CASE, to recover for personal injuries and death caused by a collision between a passenger train of the defendant and an automobile operated by the decedent Harry C. Williams upon a grade crossing near Alton, November 12, 1922. At the time of the accident the plaintiff Edwin Collishaw was sitting beside Williams in the front seat of the car. The plaintiff Lora Williams and her child Lois E. Williams (the plaintiff's intestate) were occupying the rear seat.

The cases were tried together by jury with verdicts for the defendant in the actions for the death of Harry C. Williams and for the injuries sustained by Collishaw. There were verdicts for the plaintiffs in the other suits. In the last-mentioned cases the defendant excepted to the denial of its motions for a nonsuit and a directed verdict; in the cases which resulted in verdicts for the defendant, the plaintiffs excepted to the refusal of the court to grant certain requests for instructions and to the argument of the defendant's counsel.

Other facts are stated in the opinion. Transferred by *Allen,* J.

*William H. Sleeper* (by brief and orally), for the plaintiffs.

*George T. Hughes* (by brief and orally), for the defendant.

MARBLE, J. No exception was taken to that portion of the charge relating to the conduct of the plaintiff Lora E. Williams. She had "entrusted her safety" to her husband, who was driving, and it does not conclusively appear that she was not justified in so doing. Laws 1923, *c.* 13. The plaintiff's intestate was but a few months old and therefore incapable of exercising any care whatever. *Carney* v. *Railway,* 72 N. H. 364, 368, and cases cited. The negligence of the driver could not be imputed to either of them. *Noyes* v. *Boscawen,* 64 N. H. 361; *Warren* v. *Railway,* 70 N. H. 352, 360; *Collins* v. *Hustis,* 79 N. H. 446, 449; *Bowley* v. *Duca,* 80 N. H. 548, 549. Consequently, the only question presented by the defendant's motions is whether or not there was sufficient evidence to support

a finding of negligence on the part of the defendant contributing to the accident.

The grounds relied upon comprise (1) failure to give the statutory signals, (2) excessive speed, (3) failure to provide an automatic gong or other means of notice of the approach of trains, and (4) failure of the fireman or engineer to keep a proper lookout.

Since no motion was made to withdraw any of these issues from the jury, if the evidence warranted the submission of one of them, consideration of the others is unnecessary.

At the time of the accident the train was approaching the Alton station, which was located a half mile west of Durgin's crossing, where the collision occurred. The automobile was proceeding on the highway from New Durham to Alton.

Collishaw testified that as the car drew near the crossing he was listening for a whistle with "all the attention that was possible for a man to give," and that he did not hear the statutory signal; that he looked up the track, saw no train in sight, and said to Williams, "Clear line"; that his attention was first called to the train by a "sharp blast of the whistle," and that the engine was then "right on" them.

Collishaw and Williams were both on the active lookout for a train. While there is no direct testimony as to what Williams heard, it is a fair inference from his conduct and his failure to reply when Collishaw called out "Clear line," that he did not hear any whistle.

Mrs. Williams did not recall hearing the whistle, and a young woman on horseback on the opposite side of the crossing failed to hear it. Neither this witness nor Mrs. Williams, however, was listening for the approach of the train. The same was true of another witness, who was working in a shed nearby.

The engineer testified that he gave the statutory signal at the whistling-post and did not whistle again; that he was practically on the crossing when he first saw the plaintiff's car, and that he then had no time to whistle. He was corroborated by the conductor and trainmen, who testified that the regular crossing signal was given.

Sixteen witnesses in addition to those already mentioned testified that they heard a whistle. Much of this evidence is not inconsistent with Collishaw's testimony, and some of it tends strongly to support his assertion that no whistle was sounded until the danger of collision was imminent, and that the signal then given was a single sharp blast.

The driver of an automobile approaching the crossing from the west, when a short distance therefrom, heard "just one" blast of the whistle followed by the sound of the collision. He stated that the time between the whistle and the crash was very short.

Two of the passengers on the train were called as witnesses. One stated that he heard "the usual whistle that they whistle at all crossings." The other testified: "The first that attracted my attention was a blast from the whistle. . . . It aroused me in some way; whether it was the regular whistle or a shorter blast I don't know, but it was near that crossing."

Of the eight witnesses who lived near the scene of the accident only one testified positively to hearing two long and two short whistles. This witness was sick in bed at the time and could state only as an expression of opinion that this signal was given at the whistling-post. Five of these witnesses did not see the train at all. One of them stated that the train sometimes whistled "down around the crossing." To the question, "Sometimes it whistles in fairly near the crossing, doesn't it?" he answered yes.

The accident occurred on Sunday, and the train in question was the regular Sunday-paper train. Although many of the witnesses were waiting for the arrival of the papers, they were not consciously listening for the approach of the train. One was "talking with the boys" in front of a store. Another was indoors reading. Two were having lunch. Others were engaged in household tasks or in conversation. Several were at the station. One person testified that he was standing at the front of the station platform when he heard the engine whistle; that he immediately "stepped out on the track and saw the train coming." It was then in plain sight and apparently so near the crossing that the witness was unwilling to say decisively that it had not reached that point.

The station agent and two others assumed that the signal was the one ordinarily given. They did not see the train.

The assistant postmaster of Alton, called by the defendant, testified that he was waiting outside the station to meet a passenger. His testimony concluded as follows:

"Q. As to the whistle that you heard, was it distinct or otherwise? A. Yes, I heard this one short blast. Q. That was, you heard the sound pretty distinctly? A. Yes. Yes, one short blast."

Cross-examination:

"Q. And that one short blast might have been two or three hundred feet from Durgin's crossing? A. I couldn't tell. Q. I

mean, so far as you know it might have been in there? A. Well, I don't know. I heard it; I could n't see Durgin's crossing. Q. But you are sure it was one sharp blast? A. I heard one sharp blast."

In view of this conflict in the evidence the jury may well have found that the engineer failed to give the signal required by statute (P. L., c. 249, s. 23), and that such signal, if given, would have prevented the accident.

The defendant's contention that there can be no recovery because the negligence of Harry C. Williams was the sole cause of the collision is untenable. The rule of *Morier* v. *Hines*, 81 N. H. 48, does not apply unless the driver of the automobile is "fully informed of the train's approach." *Phillips* v. *Railroad*, 81 N. H. 483, 487; *Stinson* v. *Railroad*, 81 N. H. 473, 475.

It follows that the defendant's exceptions must be overruled.

The plaintiffs' exceptions require but brief consideration. The presiding justice has found that six of the eight requests for instructions were given in substance. No error is perceived in this finding, and none has been suggested.

Of the remaining requests, one virtually called for a ruling of law that certain conduct on the part of the engineer constituted negligence. Obviously, this was a question of fact.

The other request was based upon the premise that Williams was entitled to rely upon the assurance of Collishaw that the track was clear. Since the essential inquiry on this issue was the reasonableness of Williams's conduct, the request was properly denied.

There was evidence that Collishaw, shortly after the accident, stated that the speed of the automobile was twenty-five miles an hour. At the trial he testified that it did not exceed six miles an hour. Commenting on this testimony, the defendant's counsel said in argument: "It is quite evident that he knew the general law of the state of New Hampshire that twenty-five miles are all right upon the state highways, and it was perfectly safe for him to say that he was running within that speed. But when he learned that there was in the state of New Hampshire a statute that provided that if he came the last hundred feet of that distance at an excess of ten miles an hour he was guilty of contributory negligence, then his speed came down to six miles an hour." P. L., c. 249, s. 22.

To a ruling permitting this argument to stand, the plaintiffs excepted. It is manifest from the opening averment that counsel did not profess to testify, but merely suggested in forceful language a probable explanation of Collishaw's contradictory assertions.

*Topore* v. *Railroad,* 79 N. H. 169. Since the suggested explanation might fairly be inferred from the evidence, the argument was unobjectionable. *Berry* v. *Railway,* 79 N. H. 161; *Gosselin* v. *Company,* 78 N. H. 149, 151; *Hamlin* v. *Philbrook,* 78 N. H. 144, 146.

The order in each case is

*Judgment on the verdict.*

ALLEN and BRANCH, JJ., did not sit: the others concurred.