Rockingham, }
June 7, 1927. }

EARLE T. WEBSTER *v.* RANDOLPH SEAVEY.

*William H. Sleeper*, for the plaintiff.

*George T. Hughes* and *George R. Scammon*, for the defendant.

MARBLE, J. The accident occurred near Pigeon hill, so-called, in Effingham, November 15, 1923. The plaintiff and defendant together with the witnesses Glidden and Keniston were hunting deer. They had been out since early morning and had met at a certain bridge late in the forenoon. The defendant describes the accident as follows:

"I met Mr. Glidden and we went down toward the bridge and we had a general consultation there of what we would do, and we made a kind of arrangement to go up the path and spread out toward Pigeon hill, and make a drive of that hill and then go to dinner. We were to go in so many yards apart, or so many feet, keep a proper distance apart, and go through and see if we couldn't start something in the woods toward Pigeon hill. . . .

"Mr. Webster I believe went into the woods first, and we wanted him to go along a little farther with us boys, but he didn't seem to care to go. He wanted to go in there, so the other three of us went along up further, and we went in about a hundred, probably fifty, yards apart. I think Mr. Keniston and Mr. Glidden and myself — I don't know which one went in first; I couldn't remember. But I was the last one. I went up around to the meadow; went across to Pigeon hill. . . .

"I waited there some time and whistled and nobody answered, and my thoughts was, I guess the boys have all thought I have been a little too long, and they know that I can get back over to the house, and they are getting hungry and they are gone to dinner. So after a time I went back into the swamp. I heard some rustling out in the swamp; went back into the swamp; thought I heard some rustling out there, and thought I would just whistle to see if I could attract anybody's attention; and walking along very slowly, I suppose this object at a distance caught my eye, and I turned quick, and, of course, thinking it was a deer, I shot. . . .

"As soon as I fired, why at first there seemed to be no response. I could see nothing at the distance, and I thought, Well, I guess, Seavey, you have made a mistake this time — poor shot. And I started to move along. Then I heard the noise of somebody—particular noise. And at first I thought, Well, I guess I have wounded a deer. And then, a second — Why, I could realize it was a human being, and my thoughts was to rush over there and find out who it was; then I rushed over, and I found Mr. Webster there."

The plaintiff requested the court to instruct the jury that "on all the evidence the defendant was negligent in firing at the time and in the way he did." If the defendant told the truth, he did not fire without taking some precaution. His testimony on that point is as follows:

"Q. When with reference to the time that you shot did you whistle? A. Well, of course it was probably short duration of time, I couldn't say how long, probably might have been a minute, half a minute, few seconds. Q. Why did you whistle, Mr. Seavey? A. Well, I heard a little rustling noise out in the woods, and I wanted to make sure that it wasn't anybody out there. Q. Was that a custom that had been followed by you? A. Well, yes, that is a general custom that I usually made in the woods. Q. Is there a custom of whistling in the woods? A. Well, we use that custom a great many times by men that is familiar with the woods. Q. Did you get any response to your whistle? A. No, sir."

Whether the defendant's story was entitled to belief, and if so, whether the precaution he took constituted reasonable care were plainly questions of fact. The request was in effect a motion to direct a verdict for the plaintiff on the issue of the defendant's negligence, and since the testimony on that issue was susceptible of opposite inferences, the request was properly denied. *Williams* v. *Duston*, 79 N. H. 490; *Hussey* v. *Railroad*, 82 N. H. 236, 240.

A like question was raised by five other requests, each of which called for a ruling of law that certain conduct on the part of the defendant constituted negligence. Obviously, this was a question for the jury. *Williams* v. *Railroad*, 82 N. H. 253, 257.

On the day of the accident the plaintiff did not wear a "special gunner's outfit" comprising a red cap and checkered coat, but "had on a pair of khaki pants and common cap, common coat." There was evidence that hunters frequently wear red caps in order to lessen the chances of being taken for deer. The other members of the party were wearing red caps that day.

The plaintiff invoked the doctrine of the last clear chance by requesting the court to charge the jury that he could not be denied a recovery because of any negligence in respect to his attire, since the defendant knew that he had "gone into the woods dressed as he was" and that he was "thereafter powerless to change that situation."

It is an essential element of the last chance doctrine that the defendant's knowledge of the plaintiff's perilous situation shall be superior to that of the plaintiff. Here the plaintiff knew as much about his own apparel and the danger of wearing it as the defendant did. If his failure to dress conspicuously constituted negligence, that negligence continued throughout the hunting trip and he knew at all times the general danger to which such negligence exposed him. It is true that he was unconscious of the specific peril in which he stood when the defendant fired. But neither was the defendant then aware that it was the plaintiff or any other person whom he was thus imperiling. Believing what he saw to be a deer, he shot the object intentionally. If he committed a wrong, it was not because he failed to use due care after discovering the plaintiff's presence, but because he failed to recognize the plaintiff as present at all.

While in the ordinary case application of the last chance doctrine does not depend upon the defendant's knowledge of the plaintiff's identity, clearly a different rule is called for where, as in the instant case, the defendant actually believes that the object in peril is not a human being but an animal which he may rightfully kill. The plaintiff

does not claim that the defendant wantonly or intentionally inflicted injury upon him, but merely that he failed to take reasonable precautions to ascertain whether the object he was about to shoot was a man or a deer. And although the jury were correctly instructed that in determining that issue it was proper for them to consider the fact that the defendant knew that the plaintiff was "without a red cap and was wearing khaki trousers," they were also correctly informed that they might find that the plaintiff by reason of such attire was himself guilty of negligence which precluded a recovery.

Three of the remaining requests comprise the following extracts from the opinion in *Tullgren* v. *Company*, 82 N. H. 268, 276: "Danger consists in the risk of harm as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care."

The plaintiff further requested the court to instruct the jury as follows: "One who goes gunning may not reasonably anticipate that a man in the woods will in fact be met, but by reason of the risk that one may be, he is called upon to do what is reasonably required to identify the object before he fires at it. One who hears a rustling and sees the bushes move may not reasonably anticipate that the cause of such rustle in and moving of the bushes is a man instead of a deer, but by reason of the risk that it may be a man instead of a deer, he is called upon to do what is reasonably required to find out."

While the jury were instructed that the defendant was required to exercise reasonable care to avoid injury to people who might be in his locality and that a higher degree of care was called for where the likelihood of accident was considerable than where it was slight, they were at no time explicitly told that due care might require the defendant to refrain from shooting under the circumstances even if he entertained a reasonable belief that the object before him was a deer.

The principle embodied in the requests was important, and should have been called specifically to the jury's attention. *McCarthy* v. *Souther*, *ante*, 29, and cases cited. The denial of the requests may have proved peculiarly harmful, since the jury were given the conventional instructions relating to the burden of proof, and expressly directed to decide the issues by a balance of probabilities.

The fact that the verdict must be set aside for this reason makes it unnecessary to consider the exception relating to the alleged misconduct of the jury.

*New trial.*

All concurred.