## HIGGINS v. LEDO et al.
### No. 2773.

Circuit Court of Appeals, First Circuit.
July 7, 1933.

Howard W. Ameli, U. S. Atty., and Herbert H. Kellogg, Emanuel Bublick, and Murray Kreindler, Asst. U. S. Attys., all of Brooklyn, N. Y., for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

██ The appellants press us to reverse because they say the testimony of Mills is insufficient to sustain the convictions, and this, not because the testimony of an accomplice, even though uncorroborated, will not serve as a matter of law, or that it lacks in breadth or scope to implicate them, but because, as they say, Mills was so unworthy of belief as shown by his confused and contradictory testimony that no court should allow a jury to believe him. That Mills was a drunkard and had elected to save himself as best he could by testifying for the government is certain. It is also true that in respect to times and places he was not always so clear and consistent that the charge that he was in error in some details can be successfully met. But, even so, his testimony leaves one who reads it morally sure that these appellants were all acting in concert with him and others to manufacture and pass counterfeit money. That being so, McGinniss v. United States (C. C. A.) 256 F. 621, upon which the appellants rest their claim to reversal, can be used only as indicating a comparative test on the question of the credibility of an accomplice. General language applied to one witness cannot always, indeed can rarely, furnish the decisive means for determining whether another witness should be believed. With the law well settled that the testimony of an accomplice need not be corroborated to support a conviction, Caminetti v. United States, 242 U. S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; United States v. Mule (C. C. A.) 45 F.(2d) 132, the issue now before us is whether we can and should say that no impartial jury could reasonably have believed Mills. The answer can be found only by reading the record in this case, and from that we can reach no other conclusion than that it was not only reasonable to believe that these appellants were connected with the counterfeiting as Mills testified, but that it would have been a miscarriage of justice had the trial resulted in anything but their conviction.

As to Bruno, moreover, there was corrob-

Harold L. Turk, of Brooklyn, N. Y., for Libero Santaniello.

Phillip F. Seigenfeld, of Brooklyn, N. Y., for Mary Woods, Carmine Bruno and Salvatore Gesoalde.

It was unquestionably open to the jury to find that Higgins came into the intersection of the ways without having given any timely signal with his horn. If the statute requiring such signal applied to the situation, it is clear that there was evidence of negligence on his part. The statute reads as follows: "Upon approaching any intersecting way or a curve or corner in a way, every person operating a motor vehicle shall slow down and give timely signal with his bell, horn, or other device for signaling." N. H. Laws of 1915, c. 129, § 7. Higgins contends that this statute does not apply to drivers on "through ways." Numerous requests for rulings based on the assumption that he was on a "through way" were made by him. They are inapplicable because, as above stated, the road on which he was travelling was not of that character. The presiding judge so ruled, and he was unquestionably right; indeed, no exception was taken to the instruction.

As to the conduct of Higgins, the judge instructed the jury that: "Applying the statute to the situation before you, it was the duty of Higgins to give warning of his approach and to slow down and proceed with care before entering the intersection of the highways, particularly as he knew that a car was approaching from an intersecting way. It is true that he had the right of way and that he had reason to believe that anyone approaching on the Suncook-Pittsfield road would observe the 'stop' sign so that he could pass in safety. But this fact alone does not relieve him from his duty of using reasonable care for his own safety and the safety of those riding with him and obeying statutory provisions; and if you find that his failure to sound the horn or his failure to proceed with caution constituted negligence and, if his negligence contributed to the injuries of Mrs. Crate and the deceased, then he might be held liable, either individually or in connection with Hobbs."

As the context clearly shows, the statute referred to was the general one requiring drivers to slow down and signal at all intersections of way (N. H. Laws of 1915, c. 129, § 7), not the one directed specially at intersections at which the view is obstructed and the speed, prima facie reasonable, is limited to fifteen miles per hour. (N. H. Laws, 1927, c. 76, § 2). The instructions were clearly correct. We do not mean to intimate that they would not have been correct, even if the road had been legally established as a trunk line under N. H. Laws, 1929, c. 119. While the statute relating to intersections where the view is obstructed was read to the jury in connection with other statutes, it appears not to have again been referred to in the charge. No request to differentiate between the two statutes was made at the conclusion of the charge. The defendant never at any time during the trial appears to have taken the position that, though the general statute relating to intersections might apply, the statute relating to obstructed intersections did not. The point was referred to in one of the defendant's requests for rulings, but was there combined with the assumption that the road was a "through way," which made the request as a whole incorrect. In the form now urged, the contention that the statute relating to intersections with obstructed view did not apply appears to be an afterthought, not open because not called to the attention of the presiding judge. Tuttle v. Dodge, 80 N. H. 304, 116 A. 627.

It was clearly open to the jury to find that, if Higgins had sounded his horn, Hobbs might have heard it and stopped, and the accident might have been avoided. It could not therefore be ruled as a matter of law that no negligence on the part of Higgins entered into the accident. On all the evidence, the case was one for the jury to decide.

The most doubtful question is whether the instructions as to the due care of the injured person were adequate. The jury were told in general terms that contributory negligence on their part was alleged, and it was a question of fact whether it had been established. The presiding judge expressed his own view that it had not. The law of New Hampshire undoubtedly is that negligence on the part of the driver of an automobile is not imputed to an invited passenger in it, and that the latter has the duty of exercising the care reasonably to be expected of one in his situation to look out for his own safety. Charbonneau v. MacRury, 84 N. H. 501, 153 A. 457; Jones, Adm'r, v. Boston & Maine Railroad, 83 N. H. 73, 139 A. 214; Williams v. Railroad, 82 N. H. 253, 132 A. 682. The thirteenth request was properly refused, since the defendant thereby in effect requested the judge to rule that any failure to use ordinary care on the part of the passengers for their safety constituted in law contributory negligence. The fourteenth request was also properly refused, since the doctrine of imputed negligence is not in force in New Hampshire. The charge as a whole was unusually fair, clear, and able, and presented the case to the jury in a manner which it would not be easy to improve upon. The finding against Hig-

gins may have been severe, but it was for the jury to say.

The other assignments of error have been examined. They seem to us not well founded, nor to require discussion.

The judgment of the District Court is affirmed, with costs to the appellees.