John A. MEHALL, Plaintiff,

v.

Jeff BAGGETT, Defendant.

No. 1766.

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 22, 1964.

Sidney S. McMath, Little Rock, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., Lloyd E. Cole, Jr., Stilwell, Okl., for defendant.

JOHN E. MILLER, Chief Judge.

In lieu of filing formal findings of fact and conclusions of law, separately stated, the court is including herein such findings of fact and conclusions of law as authorized by Rule 52(a), Fed.R.Civ.P.

The plaintiff, John A. Mehall, is a citizen of the State of Ohio and resides in the City of Wickliffe in said state. The defendant is a citizen of Arkansas and resides in the City of Prairie Grove in the Western District of Arkansas. The amount involved exceeds the sum of $10,000, exclusive of interest and costs. Thus, the court has jurisdiction by reason of such diversity of citizenship and the amount involved. Title 28, U.S.C.A. § 1332 (1963 Supp.).

The plaintiff, Mehall, was injured by being struck slightly above and to the rear of his right ankle joint by a bullet fired by someone from a high-powered rifle on October 22, 1961, while deer hunting on public lands in the State of Colorado. On October 3, 1963, he commenced this action against the defend-

ant, Jeff Baggett, to recover damages for the personal injuries, medical and hospital expenses, and loss of earnings. In the complaint the plaintiff alleged that the injury sustained by him was proximately caused by the negligence of the defendant, Baggett, in that said defendant (1) failed to use ordinary care in the handling of an extremely dangerous weapon; (2) negligently aimed a weapon at the plaintiff; (3) negligently fired his weapon at plaintiff; and (4) negligently shot the plaintiff before ascertaining that plaintiff was not a big game animal.

On October 12, 1963, the defendant filed his answer in which he specifically denied each and every allegation in the complaint except numbered paragraph 1, the jurisdictional allegations.

On January 15, 1964, the court, upon motion of the defendant, granted leave to file an amendment to his answer, and on January 22 the defendant filed amendment in which he alleged:

"That if the plaintiff was injured as alleged in the complaint that said injuries were solely caused and occasioned by his own negligence and this defendant pleads the contributory negligence of the plaintiff as a full and complete defense herein. * * * that the plaintiff had knowledge of the risk of hunting in Colorado and appreciation of the risk involved in hunting in the manner in which he participated as a hunter and this defendant pleads assumed risk as a full and complete defense herein."

█ Since the jurisdiction of the court is based upon diversity of citizenship of the parties and the amount involved and the incident occurred in Colorado, the substantive law of Colorado governs the rights and liabilities of the parties.

The case was tried to the court without a jury on July 15, 1964, and at the conclusion of the introduction of the testimony, the parties waived oral argument but did call the court's attention to certain decisions which they desired the court to consider.

At the trial it was stipulated that under the law of Colorado negligence of a plaintiff which contributes to an injury is a complete defense and bar to plaintiff's claim for damages.

The parties have not called the attention of the court to any decision of any of the courts of Colorado dealing with the questions involved in the instant case, and the court, after considerable research, has not found any Colorado decisions on the questions before the court. However, there is no indication that the general rules that have been applied by other courts would not be applied by the courts of Colorado.

The plaintiff makes no claim that he was shot intentionally by the defendant, but, as above set forth, alleged and now contends that the injuries received by him were proximately caused by negligence on the part of the defendant as alleged in the complaint.

In 56 Am.Jur., Weapons and Firearms, Sec. 26, p. 1008, the general rule applicable to the facts established by the evidence is stated as follows:

"In some cases involving questions of liability for unintentionally shooting a person while hunting, the courts have said that the defendant is under a duty to exercise ordinary or reasonable care; in others it has been said that a high degree of care is required. It is apparent, however, that whichever formula is used, the courts recognize that the precautions which must be observed by the defendant to avoid the imputation of actionable fault are those adapted to the dangers peculiar to the situation, and that regardless of which formula is used it must be applied in view of those dangers. A firearm used for hunting is undoubtedly a dangerous instrumentality. Due care may require a hunter who hears a rustling in and sees a moving of bushes to refrain from shooting without doing what is reason-

ably necessary to find out what causes the commotion, even though he entertains the belief that the object before him is a deer, if he knows that there is an inconspicuously clad hunter in the woods; but unless the defendant is guilty of negligence he cannot be charged with liability; * * * "

In an annotation in 53 A.L.R. 1205, following the opinion in Webster v. Seavey, (1927) 83 N.H. 60, 138 A. 541, 53 A.L.R. 1202, the annotator stated the general rule as follows:

"The question as to liability for intentional injuries by firearms, or for injuries caused by negligently allowing others to handle or get possession of loaded firearms, is not touched upon in this annotation.

"One who has in his possession, or under his control, an instrumentality exceptionally dangerous in character, is bound to take exceptional precautions to prevent an injury being done thereby. A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to person or property. While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say, in general terms, that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. The test of liability is the power of a prudent person to foresee injury; and this question, of course, depends on the particular circumstances of the case, including the nature of the instrumentality, the time, the place and the status of the person injured. 20 R.C.L. Secs. 47, 48, pp. 51, 52.

"A firearm used for hunting is a dangerous instrumentality within the above rule. Rudd v. Byrnes, (1909) 156 Cal. 636, 26 L.R.A. (N. S.) 134, 105 Pac. 957, 20 Ann.Cas.

124; Morgan v. Cox, (1856) 22 Mo. 373, 66 Am.Dec. 623; Moebus v. Becker, (1884) 46 N.J.L. 41; Gibson v. Payne, (1916) 79 Or. 101, 154 Pac. 422, Ann.Cas.1918C, 383.

"The courts in the cases within the scope of the present annotation reflect some difference of view, or at least of statement, as to whether the duty on the part of defendant is to exercise ordinary or reasonable care, or, on the other hand, a high degree of care. It is apparent, however, that whichever formula is used, the courts recognize that the precautions which must be observed by the defendant to avoid the imputation of actionable fault are those adapted to the dangers peculiar to the situation; and that the formula of reasonable or ordinary care, if used, is to be applied in view of those dangers."

Manning v. Jones, (1910) 95 Ark. 359, 129 S.W. 791, was a suit brought by plaintiff against defendants to recover damages for injuries sustained by him on account of their alleged negligence and carelessness in shooting him while engaged in hunting on his premises. The trial court directed a verdict for the defendant and plaintiff appealed. In reviewing the judgment of the trial court, the Supreme Court of Arkansas beginning at page 361 of 95 Ark., at page 792 of 129 S.W. said:

" * * * The test of liability is not whether the injury was accidentally inflicted, but whether the defendants were free from blame.

"Mr. Thompson, in drawing the distinction between an intentional shooting and a shooting by mere accident, says: 'But, where the weapon is accidentally and not purposely pointed at another, * * * the liability of the person pointing it will depend upon the answer to the question whether he was guilty of negligence, or whether it was the result of pure accident, unmixed with negligence. Here, as in other cases, the

test of the liability of the defendant is whether in what he did he failed to exercise reasonable or ordinary care. And here, as in other cases, the reasonable care which persons using firearms are bound to take in order to avoid injury to others is a care proportionate to the probability of injury; and the principle is applicable that he who does what is more than ordinarily dangerous is bound to use more than ordinary care. Whether in case of an injury proceeding from such a cause ordinary or reasonable care was used by the person inflicting it will in almost every case present a question for a jury.' 1 Commentaries on the Law of Negligence, Thompson, § 780, and cases cited."

The plaintiff and the defendant were each lawfully hunting on the public domain of the State of Colorado, and the test of liability of the defendant is whether, in doing what he did, he failed to exercise reasonable and ordinary care. The reasonable care which persons using firearms are bound to use in order to avoid injury to others is a care proportionate to the probability of injury. The principle that he who does what is more than ordinarily dangerous is bound to use more than ordinary care is applicable. The question of plaintiff's contributory negligence is a question to be determined by the court or a jury, and in determining these questions, the fact finder should consider all of the facts established by the evidence. If, as contended by the defendant, the plaintiff was not properly attired in that he did not wear a red cap or other bright apparel which could be discerned by other hunters, such fact should be considered in determining whether he was guilty of contributory negligence. Webster v. Seavey, supra.

The deer hunting season opened in Colorado on Saturday, October 21, 1961. The plaintiff, accompanied by his nephew, a boy aged between 15 and 16 years, established their camp either on Friday, October 20, or on Saturday, October 21, at a certain place designated by a Mr. Gordon. Apparently the most available entry into the public domain area was by means of a rarely used "logging" road, which passed through the property of Mr. Gordon, variously referred to by the witnesses as the Gordon Ranch. It appears that most hunters using that means of entry into the public domain stopped at the Gordon Ranch, and Mr. Gordon made suggestions to the hunters of desirable camping spots. On the day that the plaintiff and his nephew entered the public domain, they stopped at the Gordon Ranch where they met other hunters, including the defendant Baggett and his party, who were likewise on their way to establish a camp in the area as a headquarters for hunting. Mr. Gordon accompanied the defendant and his party to the camping site selected by them which was located a distance of approximately one-half mile from the camp established by the plaintiff and his nephew. There were other camps established in the general area. However, none of them appeared to be within one-half mile of any other camp. It was customary and, in fact, required by the regulations of the Colorado Fish and Game Commission that each hunter should wear clothes of a conspicuous color, preferably yellow or red, in order that he might be easily distinguished from a deer. The testimony does not disclose whether the plaintiff and his nephew hunted on Saturday, October 21, but early the next morning, Sunday, October 22, they left their camp for an area approximately two miles east and slightly north of their camp. Each of them carried or wore a red coat or shirt with a red hood attached thereto. They also carried rifles, game-spotting equipment and binoculars. After reaching the area above mentioned, they set up the game-spotting equipment and located several deer at various places. At one time the plaintiff left his nephew in an effort to approach within shooting range, but the deer "spooked" and apparently the plaintiff returned to his nephew on the plateau to which they had gone. The entire terrain in the public domain

was exceedingly rough and steep. The hills or mountains were of varying heights, and likewise the ravines were of varying widths and depths. It was a difficult terrain to travel upon, and ordinarily took considerable time to travel even a short distance.

The court is not unaware of the holding in the case of Brown Paper Mill Company, Inc., v. Irvin, (8 Cir. 1943) 134 F.2d 337, in which Judge Sanborn, writing for the court, said:

"Findings of fact should be 'a clear and concise statement of the ultimate facts, and not a statement, report, or recapitulation of evidence from which such facts may be found or inferred.' (Citing cases)."

but because of the irreconcilable conflict between the testimony of the plaintiff and his nephew and the testimony of the defendant and disinterested witnesses as to the location of the plaintiff at the time he was shot, the court believes that it is advisable that the background of the ultimate facts found by the court should be set forth.

The plaintiff and his nephew, who testified by deposition, were the only witnesses adduced by plaintiff who testified as to the location where plaintiff was shot and the circumstances thereof. They testified that about 10 o'clock on the morning of October 22, while they were on the plateau, approximately two miles from their camp, they, by the use of binoculars and game-spotting equipment, noticed two men and a jeep within 100 or 150 yards of their camp, and they decided to return to their camp; that they proceeded down the mountain until they reached a point approximately 450 feet or 150 yards east and slightly north of the location of the men; that at that time they, the plaintiff and his nephew, were standing below all foilage, trees, vines and underbrush, and were on an elevation approximately 200 or 300 feet higher than the two men; that there was no obstacle of any kind or character between the plaintiff and the men whom they had observed before they began their descent from the plateau; that the men were dressing a deer which was lying on its back and the defendant was standing stooped over the dead deer watching his companion, a Mr. Webb, who was engaged in dressing the animal; that suddenly the defendant left the deer and walked a distance of 40 feet to the jeep from which he obtained his Winchester and knelt down on one knee and deliberately aimed the gun at the plaintiff; that when he, the plaintiff, saw the defendant aiming the gun at him, he wheeled to the left and as he did so, he was struck by a bullet which entered his right ankle on the outside above and slightly back of the ankle joint, which bullet went through the leg of the boot on the right side, proceeded through his ankle behind the joint, and out through the left side of the leg of the boot which plaintiff was wearing at the time. They further testified that when the defendant arrived and found the plaintiff had been shot, he administered two shots of penicillin and dressed the wound as best he could with material from the first aid outfit which he had on his person; that the defendant freely admitted that he had shot the plaintiff and that he was very sorry and that he would take care of him. Both witnesses testified that they heard only one shot from the place where they testified the defendant and Mr. Webb were standing. In substance the above is substantially the testimony upon which the plaintiff based his claim.

The testimony of the plaintiff's nephew was contradicted in many respects by other disinterested witnesses who talked to the nephew that afternoon while helping him dismantle the camp. In fact, according to the witnesses who talked to the nephew, the accident did not happen as the plaintiff and nephew testified.

Mr. Gordon, the rancher, while at defendant's camp on Sunday, October 21, had become ill and the defendant Baggett, who is a prominent physician, 57 years old, and engaged in the active practice of his profession, had given him penicillin and conveyed him to the ranch. The defendant returned to his camp but during

468

the night he decided that he should call on the rancher early the next morning in order to give him further treatment, and particularly to determine whether he was allergic to the use of penicillin. Accordingly, the defendant Baggett and Mr. Webb left their camp early the morning of the 22nd and drove to the rancher's home. After visiting the rancher and after he had again been examined by the defendant, they, the defendant and Mr. Webb, started on the return journey. They drove very slowly and looked for deer in the ravines and on the hills on either side of the road. When they reached a point 100 to 150 yards from the plaintiff's camp, they discovered a deer upon the mountain to the left, and in a northeasterly direction from where they were at that time. After ascertaining that the object was a deer, they both fired at the deer. The defendant Baggett fired two shots and was positive that he hit the deer, but not sufficiently to knock it down. Mr. Webb fired two or three shots, and immediately ran to the north and east to reach higher ground to improve his position and to enable him to observe the deer. The defendant remained where he was, and after Webb had gone to a better location from which to observe the movements of the deer, the defendant Baggett heard one other shot but did not know who fired it. Within a very short time—one minute—he heard a call or scream which he determined was emitted by a human being, and he started in that direction. He proceeded up the mountain or Gypson Hill, as some of the witnesses described it, and after entering the heavy vegetation, he discovered the plaintiff's nephew standing near a cedar tree but did not see the plaintiff until the nephew pointed out his location, which was 10 or 12 feet from where the nephew was standing. The defendant discovered that the plaintiff had been shot and proceeded to administer first aid, and arrangements were made to convey the plaintiff to the Valley View Hospital at Glenwood Springs, Colorado.

The investigation made by disinterested witnesses that afternoon disclosed the exact location of the plaintiff when he was injured. The court will summarize the testimony of only one witness adduced by the defendant. Mr. Billy Ballew, State Game Ranger of Oklahoma, who was hunting in the area and completely disinterested, testified positively as to the location of the plaintiff when he was shot; that the plaintiff was at least 100 or 150 feet higher up the mountain from the place where plaintiff testified he was standing, and was completely concealed by the foilage from the sight of anyone situated as were the defendant and Mr. Webb at the time they saw and shot at the deer; that he found the empty penicillin bottle that had contained the penicillin which the defendant administered to the plaintiff before his removal from the mountain to the hospital; that the deer, at which the defendant and Mr. Webb shot, was a considerable distance north and slightly east of the place where the plaintiff was; that he located the place where the deer was shot and followed the blood for a distance of 250 yards before he lost the trail because of the condition of the terrain. Other witnesses corroborated Mr. Ballew, to say nothing of the positive testimony of the defendant, Baggett.

The testimony does not establish that the injury received by the plaintiff was occasioned by any negligence whatsoever of the defendant. Other hunters were in the area, and the range of the high-powered rifles being used by various hunters is such that it is impossible to determine who fired the shot that struck the plaintiff. After considering all of the evidence and circumstances, the court is unable to accept the testimony of the plaintiff and his nephew as to their location when plaintiff was shot or that defendant saw plaintiff or negligently failed to see plaintiff. The court is convinced that the defendant was not negligent in any manner in his conduct and did nothing which proximately caused the injury received by plaintiff.

In view of the above finding, it does not appear necessary for the court to consider the contention of the defendant that

plaintiff was guilty of contributory negligence, although the testimony on that question is rather convincing that the plaintiff and his nephew were not properly attired when they were making their journey from the top of the plateau toward their camp.

The injury received by the plaintiff is a serious one, and evidence was introduced which established the nature and extent of the injury, the medical and hospital expenses, and the pain and suffering endured by plaintiff, but in view of the conclusion reached by the court on the question of liability, it appears to be unnecessary to consider the extent of the injury, the amount of the medical and hospital expenses, and loss of time.

Therefore, a judgment is being entered today dismissing the complaint of the plaintiff and adjudging costs against the plaintiff.